**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 17-cv-1039 |
| DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendant. | ) ) ) ) | |

**DEFENDANT'S OPPOSITION TO**
**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## Table of Contents

INTRODUCTION ................................................................................................................. 1

I.   Plaintiff Concedes the Adequacy of Defendant's Search and Several Categories of Withholdings, Substantially Narrowing the Scope of the Litigation ................................... 2

II.  The FBI Properly Issued a Partial *Glomar* Response Pursuant to Exemption 7(E) ............. 3

III. The FBI Properly Withheld Information Pursuant to Exemption 7(D), Where the Information Would Reveal the Identity or Information of Confidential Sources ............... 7

   A.   The CHSs at Best Buy Were Given an Express Assurance of Confidentiality ........ 8

   B.   The FBI has not Waived Any Claims of Confidentiality ...................................... 11

IV.  The FBI Properly Withheld Information Pursuant to Exemptions 6 and 7(C), Where the Information Would Constitute a Clearly Unwarranted Invasion of Privacy ..................... 13

   A.   Name of Individual Convicted of a Crime Was Appropriately Withheld .............. 14

   B.   The FBI Properly Withheld the Names and/or Identifying Information of Third-Party Commercial Institution Personnel, i.e., Best Buy personnel ........................ 16

V.   The FBI Properly Invoked FOIA Exemptions Concerning Portions of the Withheld Informant Files ................................................................................................................. 18

CONCLUSION ................................................................................................................... 21

# Table of Authorities

## Cases

*Am. Civil Liberties Union v. U.S. Dep't of Justice,*
  655 F.3d 1 (D.C. Cir. 2011) .................................................................................. 14, 15, 16

*Am. Immigration Council v. United States Dep't of Homeland Sec.,*
  30 F. Supp. 3d 67 (D.D.C. 2014) ....................................................................................... 19

*Borda v. U.S. Dep't of Justice,*
  245 F. Supp. 3d 52 (D.D.C. 2017) ..................................................................................... 12

*Boyd v. Criminal Div. of U.S. Dep't of Justice,*
  475 F.3d 381 (D.C. Cir. 2007) .............................................................................................. 7

*Coleman v. F.B.I.,*
  13 F. Supp. 2d 75 (D.D.C. 1998) ......................................................................................... 4

*Competitive Enter. Inst. v. United States Envtl. Prot. Agency,*
  12 F. Supp. 3d 100 (D.D.C. 2014) ..................................................................................... 13

*Davis v. U.S. Dep't of Justice,*
  968 F.2d 1276 (D.C. Cir. 1992) ......................................................................................... 12

*Dow Jones & Co. v. U.S. Dep't of Justice,*
  917 F.2d 571 (D.C. Cir. 1990) ........................................................................................... 12

*Dutton v. U.S. Dep't of Justice,*
  302 F. Supp. 3d 109 (D.D.C. 2018) ..................................................................................... 3

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice,*
  296 F. Supp. 3d 109 (D.D.C. 2017) ................................................................................... 19

*Fitzgibbon v. C.I.A.,*
  911 F.2d 755 (D.C. Cir. 1990) ........................................................................................... 16

*Gilman v. U.S. Dep't of Homeland Sec.,*
  32 F. Supp. 3d 1 (D.D.C. 2014) ........................................................................................... 4

*Light v. U.S. Dep't of Justice,*
  968 F. Supp. 2d 11 (D.D.C. 2013) ....................................................................................... 4

*Martin v. U.S. Dep't of Justice,*
  488 F.3d 446 (D.C. Cir. 2007) ........................................................................................... 15

*Mayer Brown LLP v. I.R.S.,*
  562 F.3d 1190 (D.C. Cir. 2009) ........................................................................................... 4

*Parker v. U.S. Dep't of Justice*,
  934 F.2d 375 (D.C. Cir. 1991) ........................................................................................ 11, 12

*Petrucelli v. U.S. Dep't of Justice*,
  51 F. Supp. 3d 142 (D.D.C. 2014) ......................................................................................... 4

*Proctor v. U.S. Dep't of Justice*,
  72 F.3d 920 (D.C. Cir. 1996) ............................................................................................... 12

*Rojas-Vega v. United States Immigration & Customs Enf't*,
  302 F. Supp. 3d 300 (D.D.C. 2018) ...................................................................................... 3

*Schrecker v. U.S. Dep't of Justice*,
  349 F.3d 657 (D.C. Cir. 2003) ............................................................................................. 18

*Shapiro v. U.S. Dep't of Justice*,
  -- F.3d --, 2018 WL 3117203 (D.C. Cir. June 26, 2018) ...................................................... 5

*Shurtleff v. United States Envtl. Prot. Agency*,
  991 F. Supp. 2d 1 (D.D.C. 2013) ......................................................................................... 17

*Stein v. U.S. Dep't of Justice*,
  134 F. Supp. 3d 457 (D.D.C. 2015) ................................................................................ 19, 20

*Talbot v. U.S. Dep't of State*,
  2018 WL 2739921 (D.D.C. June 7, 2018) ........................................................................... 19

*U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*,
  489 U.S. 749 (1989) ............................................................................................................. 15

## **Statutes**

5 U.S.C. § 552(b)(7)(D) ............................................................................................................... 7

5 U.S.C. § 552(b)(7)(E) ............................................................................................................... 3

## **Rules**

Fed. R. Civ. Pro. 56(a) ................................................................................................................. 3

## INTRODUCTION

Defendant United States Department of Justice, on behalf of its component the Federal Bureau of Investigation ("FBI" or "Defendant"), has moved for summary judgment in this FOIA action, and has demonstrated that its partial *Glomar* response and withholdings were proper.

Indeed, Plaintiff concedes that many of the exemptions asserted by the FBI were appropriate, and thus narrows the scope of the litigation to four sets of challenges. Plaintiff's first remaining challenge – that the FBI's partial *Glomar* response was improperly predicated on Exemption 7(E) – fails because the FBI properly withheld information concerning certain law enforcement techniques, the effectiveness of which would be reduced by any disclosure here.

Plaintiff's second argument – that Exemption 7(D) is inapplicable because the informants at issue were not provided with an assurance of confidentiality – is meritless, as all Confidential Human Sources ("CHSs") referenced here were provided with an express assurance of confidentiality. Nor did Defendant somehow waive the protection afforded by the Exemption by identifying certain informants in a criminal proceeding.

Plaintiff's third challenge – that Defendant cannot apply Exemptions 6 and 7(C) to the names of individuals who were convicted of a crime, or to third-party commercial institution personnel – lacks support, as Plaintiff cannot show a public interest sufficient to override the relevant privacy interests.

Plaintiff's fourth and final argument – that the FBI has not properly invoked multiple exemptions in portions of the withheld informant files – fails because the FBI reasonably explained all exemptions which apply to certain types of material in the withheld files, and further demonstrated why a specific document-by-document explanation would risk the very harms protected against by the applicable FOIA exemptions.

1

In sum, Defendant's response to Plaintiff's FOIA request was entirely appropriate, and nothing in Plaintiff's Cross-Motion suggests otherwise.  This Court should therefore enter judgment on behalf of Defendant and deny Plaintiff's Cross-Motion for summary judgment.

## I.    Plaintiff Concedes the Adequacy of Defendant's Search and Several Categories of Withholdings, Substantially Narrowing the Scope of the Litigation

In response to Defendant's opening brief, Plaintiff has substantially narrowed the scope of the issues to be resolved by this Court.  Specifically, Plaintiff fails to challenge "[t]he adequacy of the FBI's search for records that it acknowledged existed and searched for as a result of EFF's request."  Plaintiff's Memorandum in Opposition ("Pl. Mem.") at 4, ECF No. 15.  In addition, Plaintiff fails to challenge numerous withholdings by the FBI.[1]  This Court should accordingly enter judgment for Defendant as to the adequacy of Defendant's search and these unchallenged withholdings.

Furthermore, Plaintiff fails to challenge Defendant's withholding of the eight informant files in full pursuant to Exemptions 6 and 7(C).  As Defendant previously explained, both exemptions justify the withholding of the informant files in full because their disclosure would constitute a clearly unwarranted invasion of personal privacy.  *See* Defendant's Memorandum of Points and Authorities ("Def. Mem.") at 19, ECF No. 13-2.  However, Plaintiff states that its "challenge to defendants' withholdings under Exemptions 6 and 7(C) is limited to the names or identifying data of third parties of investigative interest . . . and a narrow challenge to

---

[1] Those conceded withholdings are those of: (1) file numbers and investigative leads under Exemption 7(A); (2) identifying information of FBI Special Agents ("SAs") and support personnel, third-party victims, non-FBI federal government personnel, local law enforcement personnel and other third parties merely mentioned, under Exemptions 6 and 7(C); (3) names of Geek Squad employees not publicly identified by the Government; (4) source symbol numbers under Exemptions 7(D) and 7(E); (5) file and sub-file names and numbers under Exemption 7(E).  Pl. Mem. at 4.

commercial institution personnel." Pl. Mem. at 22 n. 12.   Concerning these exemptions,

Plaintiff's Cross-Motion challenges only certain "categories of information" withheld in the

produced records, *id*. at 3, (1) withholding of the "names of individuals convicted or who

pleaded guilty as a result of investigations originating from Best Buy," *id*. at 21, and (2) "the

names and identifying information of Geek Squad employees whom the FBI has already publicly

identified[.]" *Id*. at 24.   Because Plaintiff raises no genuine dispute as to any material fact

concerning the withholding of the informant files in full pursuant to Exemptions 6 and 7(C),

judgment should be entered for Defendant on this issue.[2]   *See* Fed. R. Civ. Pro. 56(a); *see also*

*Dutton v. U.S. Dep't of Justice*, 302 F. Supp. 3d 109, 125 (D.D.C. 2018) (granting summary

judgment to Defendant where "plaintiffs do not advance any arguments concerning the

legitimacy of [certain] of defendants withholdings"); *Rojas-Vega v. United States Immigration &*

*Customs Enf't*, 302 F. Supp. 3d 300, 308-09 (D.D.C. 2018) (same).

## II.   The FBI Properly Issued a Partial *Glomar* Response Pursuant to Exemption 7(E)

Plaintiff's first substantive argument is that the FBI improperly relied on Exemption 7(E)

in refusing to confirm or deny the existence of responsive records outside of the parameters

previously acknowledged.   Defendant invoked Exemption 7(E) in issuing its partial *Glomar*

response because any responsive documents would have been compiled for law enforcement

purposes and disclosing whether such documents exist could reasonably be expected to risk

circumvention of the law.   *See* 5 U.S.C. § 552(b)(7)(E).   Specifically, disclosing whether or not

there are responsive documents concerning the FBI's use, training, or recruitment of CHSs at

---

[2] Indeed, Plaintiff specifies its challenge under Exemptions 6 and 7(C) is limited to "Category 2" and "Category 3" of the "privacy exemption withholdings," which were asserted by Defendant in records produced to Plaintiff in part. Pl. Mem. at 22 n. 12. Plaintiff thus fails to challenge the withholding of the informant files in full pursuant to Exemptions 6 and 7(C).

computer repair facilities, other than the Best Buy Brooks, Kentucky facility, or at the Brooks, Kentucky facility outside the 2007-2016 timeframe, would reveal non-public information about the scope and details of the FBI's cyber-crime investigation techniques and strategies. *See* Def. Mem. at 13.

Plaintiff concedes that any responsive records would have been compiled for law enforcement purposes, *see* Pl. Mem. at 9 n. 4, but argues that Exemption 7(E) may only be applied to withhold law enforcement techniques and procedures that are "not known to the public." *Id*. at 10. Plaintiff contends that there is nothing secret about "law enforcement cooperation with technicians employed at computer repair facilities," *Id*. at 11, and argues that Defendant cannot refuse to confirm or deny the existence of any documents on that subject, pursuant to Exemption 7(E).

However, "[c]ontrary to . . . [P]laintiff's argument that FOIA Exemption 7(E) '[does not] exempt routine techniques and procedures already known to the public,' even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness." *Petrucelli v. U.S. Dep't of Justice*, 51 F. Supp. 3d 142, 171 (D.D.C. 2014) (citations omitted); *see also Light v. U.S. Dep't of Justice*, 968 F. Supp. 2d 11, 29 (D.D.C. 2013). It is for this reason that courts have routinely upheld withholdings pursuant to Exemption 7(E) where the general law enforcement techniques at issue are well-known, but disclosing the sought information would still threaten circumvention of the law. *See, e.g., Mayer Brown LLP v. I.R.S.*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (withholding information related to IRS legal settlement strategies); *Gilman v. U.S. Dep't of Homeland Sec.*, 32 F. Supp. 3d 1, 18 (D.D.C. 2014) (withholding information related to border fencing); *Coleman v. F.B.I.*, 13 F. Supp. 2d 75, 83-84 (D.D.C. 1998) (withholding information related to polygraph examination). Indeed, the D.C.

Circuit recently held that where the FBI searched a commercially-available database whose search terms are publically known, it did not need to disclose records showing how it used the search features or which searches it performed, because doing so could "potentially allow a criminal to deploy countermeasures to 'throw the FBI off their trail.'" *Shapiro v. U.S. Dep't of Justice,* -- F.3d --, 2018 WL 3117203, at * 4 (D.C. Cir. June 26, 2018). Plaintiff's cited cases do not discuss, let alone reject, the principle that information concerning well-known techniques may be withheld if the disclosure could reduce or nullify their effectiveness. *See* Pl. Mem. at 10-11.

Thus, while the technique of the FBI using CHSs at a certain computer repair facility at one period in time may be publicly known, the FBI's partial *Glomar* response here was still appropriate, because confirming or denying the existence of records showing the FBI's broader use of CHSs would likely reduce the effectiveness of those techniques. Disclosing the existence or non-existence of documents specifically concerning the FBI's use of CHSs at computer repair facilities, other than the Kentucky Best Buy facility from 2007 to 2016, would indicate the extent of the FBI's use of this law enforcement technique, which could reasonably be expected to be used by criminals to circumvent the FBI's enforcement efforts. For example, disclosing that such documents exist would logically dissuade criminals from seeking computer repair services from other Best Buy facilities and other computer repair facilities, potentially depriving the FBI of information it could use to curtail their criminal activities or encouraging criminals to destroy evidence. Conversely, revealing the FBI does not maintain CHSs at additional facilities could embolden criminals to continue their criminal activities without fear of FBI investigation. *See* Declaration of David Hardy ("Hardy Decl.") ¶¶ 57, 59, 61-63, ECF No. 13-3.

Plaintiff fails entirely to rebut the FBI's considered judgment about the risk that criminals could use information confirming or denying the FBI's use of CHSs more broadly to circumvent the law.  *See* Pl. Mem. at 8-13.  To the contrary, Plaintiff concedes that there may be "legitimate concerns" with disclosing information about the FBI's use of CHSs at other Best Buy facilities, other non-Best Buy computer repair facilities, or other time frames, but suggests that these concerns can be addressed by redacting the names of computer repair facilities and dates from responsive records.  *Id*. at 12-13.  Plaintiff's solution does not, however, address the FBI's unrebutted judgment, to which deference is owed, that revealing the existence or non-existence of records responsive to Plaintiff's request would in and of itself reveal whether or not the FBI uses, trains, or recruits CHSs more broadly than that revealed in the case of *United States v. Rettenmaier*, No. 14-cr-188 (C.D. Cal.), which itself risks circumvention of the law, for all the reasons stated in the Hardy declaration.[3]

Thus, because confirming or denying the existence of additional responsive records would reduce the effectiveness of FBI law enforcement techniques, Defendant properly relied on Exemption 7(E) to justify its partial Glomar response.[4]

---

[3] Nor has Plaintiff shown that the FBI has officially acknowledged the use of CHSs at computer repair facilities beyond the acknowledgements made in the *Rettenmaier* case about the Kentucky Best Buy facility from 2007 to 2016.  The news articles it cites all derive from information provided in *Rettenmaier*, or this FOIA case.  Pl. Mem. at 12.  And in testimony attached to Plaintiff's motion, FBI Special Agent Tracey Riley explained that in 2016, the FBI "shut down" certain CHSs at the Brooks, Kentucky facility, ECF No. 15-3 at 28, but she did not confirm or deny the existence of any additional documents concerning CHSs at that facility.

[4] Plaintiff's argument that the FBI also cannot withhold records in full or in part under Exemption 7(E) is similarly based on the argument that there is nothing secret about law enforcement cooperation with technicians employed at computer repair facilities, Pl. Mem. at 26, and therefore fails for all the reasons stated above.

### III.   The FBI Properly Withheld Information Pursuant to Exemption 7(D), Where the Information Would Reveal the Identity or Information of Confidential Sources

Plaintiff next argues that the FBI cannot withhold certain information pursuant to Exemption 7(D).  As Defendant's opening brief demonstrated, the FBI properly withheld records in full and in part under Exemption 7(D), where such records would identify a confidential source or the information provided by that source.  5 U.S.C. § 552(b)(7)(D).   Defendant established that Exemption 7(D) applied to this information because each of the Best Buy CHSs were provided an express assurance of confidentiality.  *See* Def. Mem. at 18; *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 389 (D.C. Cir. 2007).

In its challenge to withholdings under Exemption 7(D), Plaintiff argues that the FBI cannot invoke this Exemption with regard to "Geek Squad employees," without differentiating between CHSs and other employees, although its argument seems geared toward CHSs.  *See* Pl. Mem. at 13-21.  To clarify, the Best Buy employees at issue in the processed documents can be divided into two categories: (1) those that were opened as CHSs, and (2) those that were not CHSs.  Because Exemption 7(D) only applies to confidential sources, the FBI only invoked Exemption 7(D) as to Best Buy employees who were CHSs.  *See* Supplemental Declaration of David Hardy ("Supp. Hardy Decl.") ¶ 4, attached as Exhibit 2.  As Defendant previously explained the CHS informant files were withheld in full pursuant to Exemption 7(D), among other exemptions.  In addition, in the documents produced to Plaintiff the FBI also withheld pursuant to Exemption 7(D) information provided by CHSs that had not been disclosed on the docket in the *Rettenmaier* litigation.  *Id*. ¶ 5.

Similarly, in determining whether to release the names and other identifying information of CHSs, the FBI considered whether a CHS had been publicly identified in the *Rettenmaier*

litigation, and whether the name was reasonably segregable from any surrounding, exempt information.  *Id*.

Where a given CHS had been publicly identified, and that name was reasonably segregable from the surrounding information in the processed records, the name was released. Id. ¶ 7.  But if a publicly identified CHS name or identifying information was not reasonably segregable from the surrounding material, such as in vetting documents, background checks or interview notes, which were withheld pursuant to Exemption 7(D), then the name and/or identifying information of the CHS was included in that withholding under Exemption 7(D).  *Id*. ¶ 8.  A small number of the withheld-in-part documents contained the names of CHSs who had not been publicly identified in the *Rettenmaier* litigation.  Because the documents did not reveal these individuals' status as CHSs, the FBI did not withhold those names under Exemption 7(D), but did withhold them pursuant to Exemptions 6 and 7(C).  *See infra* Section IV.B; *Id*. ¶ 6.  In summary then, at issue in the FBI's Exemption 7(D) assertion are the informant files withheld in full, information provided by CHSs that was not publicly disclosed in the *Rettenmaier* litigation, and the names or identifying information of those publicly identified CHSs where the name or identifying information were not reasonably segregable in the documents.

Plaintiff makes two arguments in opposition to the FBI's Exemption 7(D) assertion: (1) none of the CHSs were granted an assurance of confidentiality, and (2) the FBI waived this exemption with respect to those CHSs who were publicly identified in the *Rettemaier* litigation. Both of these arguments lack merit.

### A.  The CHSs at Best Buy Were Given an Express Assurance of Confidentiality

In its cross-motion, Plaintiff cites certain testimony by FBI Special Agent ("SA") Tracey Riley, to argue that the Best Buy CHSs were not provided an assurance of confidentiality.

Plaintiff is incorrect.  In her declaration attached hereto, SA Riley explains that the Best Buy

CHS's were administratively "opened and treated like all other FBI CHSs," and were provided

the same oral admonishments as all other CHSs, "including a provision where the FBI noted it

would strive to protect the CHS's identity but could not guarantee their identity would not be

divulged."  Declaration of SA Tracey Riley ("Riley Decl.") ¶ 5, attached as Exhibit 1.  SA Riley

confirms that "[e]ach of the Best Buy CHSs were provided this oral admonishment.  Each Best

Buy CHS thus was expressly assured that the FBI was keeping his or her identity concealed and

would work to maintain this confidentiality."  *Id*. ¶ 6.

Plaintiff is correct that SA Riley has "direct personal knowledge of the Bureau's

relationship with Geek Squad employees at the Kentucky facility and whether the agency

granted those employees confidentiality."  Pl. Mem. at 15.  But that fact works to Plaintiff's

detriment here: SA Riley has now established, under oath, that each Best Buy CHS was given an

express assurance of confidentiality, as required by Exemption 7(D).  *See* Riley Decl. ¶ 6.

SA Riley's earlier testimony cited by Plaintiff is consistent with this conclusion.  For

example, SA Riley testified in other proceedings that certain Best Buy CHSs were not "typical"

or "truly" CHSs.  Pl. Mem. at 15.  Here, SA Riley explains that, distinct from a "typical" CHS,

who is "often directed by law enforcement to conduct certain activity," the Best Buy CHSs were

not tasked "to affirmatively investigate or otherwise seek out criminal activity."  Riley Decl. ¶ 8.

Similarly, SA Riley stated that a certain Best Buy CHS's identity "did not warrant

confidential handling."  Pl. Mem. at 15.  SA Riley explains what she meant by this in her

declaration provided herein.  SA Riley states that in her experience, "the identities of CHSs are

often highly guarded, even within the FBI.  For instance, when FBI employees discuss a CHS

internally, they will generally only refer to that source by a code name or number.  The FBI has

even requested that a case be dismissed rather than reveal the CHS's identity."  Riley Decl. ¶ 8.

SA Riley then explains that "[t]he Best Buy CHSs did not warrant these types of confidential

handling (including dismissing the case rather than having the CHS's identity revealed in court)"

because they were not tasked by the FBI to further any investigative efforts. *Id.* ¶ 9.  SA Riley

reiterates that "the FBI did assure this individual it would strive to maintain his confidentiality as

it concerned potential disclosure to the general public." *Id*.

Finally, Plaintiff notes SA Riley's testimony that she did not "open" John "Trey"

Westphal as a CHS.  Pl. Mem. at 15.  Indeed, neither John Westphal nor James Christophel, also

cited by Plaintiff, were opened as a CHS.  As SA Riley explains, "[b]ecause these individuals did

not have a specific source identification number, or an informant file, they are not considered to

be informants/CHSs by the FBI."  Riley Decl. ¶ 10; *see also* Hardy Decl. ¶ 3 n.1 (noting that

"[i]n this context, the FBI considers the term informant and CHS to be synonymous," meaning

an individual with whom the FBI has an "established relationship," who has a "specific source

identification number," and has a "distinct file containing documentation of their informant

history"); Declaration of John Westphal ("Westphal Decl.") ¶ 7, ECF No. 15-5 (noting he was

not paid by the FBI); Declaration of James Christophel ("Christophel Decl.") ¶ 6, ECF No. 15-7

(same).  Thus, neither Westphal nor Christophel constituted CHSs, as sought in Plaintiff's FOIA

request.  Rather, in its Motion for Summary Judgment, the FBI correctly noted that four Best

Buy CHSs were identified on the public docket in *Rettenmaier*, and accordingly withheld their

informant files, along with those of the other four informants whose existence was acknowledged

but whose identity was not disclosed.  Def. Mem. at 2 (citing *Rettenmaier*, 14-cr-188 (C.D. Cal.)

ECF Nos. 98, 176-4, 176-5, 180-1).

As there can be no doubt that the Best Buy CHSs were granted an express assurance of confidentiality, the FBI properly relied on Exemption 7(D) to withhold applicable records in full and in part.

### B.   The FBI has not Waived Any Claims of Confidentiality

Plaintiff argues, in the alternative, that because certain Best Buy CHSs testified in the *Rettenmaier* prosecution, and stated that they interacted with the FBI beyond the circumstances of the *Rettenmaier* case, the FBI cannot withhold under Exemption 7(D) any information related to, or provided by, those individuals.  Pl. Mem. at 18-21.  Controlling D.C. Circuit precedent holds, however, that public testimony by a confidential source does not waive the protection of the source's identity or information under Exemption 7(D), and Plaintiff has not shown that the additional "exact information" sought has already been disclosed to the public – the standard they concede applies.  *Id*. at 18, 20.[5]

The seminal case on this issue, *Parker v. U.S. Dep't of Justice*, 934 F.2d 375, 379-81 (D.C. Cir. 1991), held that public testimony by a confidential source does not waive the FBI's right to rely on Exemption 7(D) to withhold the identity or information provided by the confidential source not actually disclosed to the public.  The court found persuasive the fact that Exemption 7(D) expressly allows the government to withhold "information furnished by a confidential source" and the identity of the source, and says nothing about waiver; and the fact that the legislative history shows that Congress intended the exemption to be broad so as not to

---

[5] To be clear, Exemption 7(D) was asserted only with respect to the eight Best Buy CHSs acknowledged during the *Rettenmaier* litigation, including the four who were publicly identified in that case, and the four who were not so identified.  *See* Def. Mem. at 19.  Contrary to Plaintiff's claims, this exemption was thus not asserted over records pertaining to Best Buy employees John "Trey" Westphal and James Christophel, who were never formally opened as CHSs.

hinder law enforcement efforts. *Parker*, 934 F.2d at 380-81. The D.C. Circuit has consistently

followed *Parker*, holding that "[t]he government is obliged to disclose only the 'exact

information' to which the source actually testified." *Davis v. U.S. Dep't of Justice*, 968 F.2d

1276, 1281 (D.C. Cir. 1992) (quoting *Dow Jones & Co. v. U.S. Dep't of Justice*, 917 F.2d 571,

577 (D.C. Cir. 1990)); *see also Proctor v. U.S. Dep't of Justice*, 72 F.3d 920 (D.C. Cir. 1996)

(per curiam); *Borda v. U.S. Dep't of Justice*, 245 F. Supp. 3d 52, 61 (D.D.C. 2017) (confidential

sources' providing public testimony did not waive government's ability to invoke Exemption

7(D) to shield disclosure of their identities).

Here, Plaintiff points to certain Best Buy employees' testimony about the process of their

"routinely interact[ing] with FBI agents in the course of their investigations." Pl. Mem. at 18

(citing Declaration of Justin Meade ¶¶ 4-7, ECF No. 15-4; Westphal Decl. ¶¶ 5-7; Declaration of

Randall Ratliff ¶¶ 3-7, ECF No. 15-6; Declaration of James Christophel ¶¶ 3-6, ECF No. 15-7;

Declaration of Michael Hans ¶¶ 3-6, ECF No. 15-8). But Plaintiff has not shown that that

testimony matches the information that is being withheld under Exemption 7(D), which consists

of information provided to the FBI by the CHSs that was not publicly disclosed in the

*Rettenmaier* litigation, certain names and identifying information of publicly-identified CHSs,

and other information in the CHSs informant files. *See Davis*, 968 F.2d at 1280 (FOIA

"require[s] the requester to point to 'specific' information identical to that being withheld"). As

explained in Defendants' opening brief, an informant file is the entire collection of source

material provided by a confidential source and can span multiple investigations. Aside from

information provided by the sources in various investigations, the file can also include

photographs of CHSs, CHS maintenance documents (records used to open, validate, evaluate,

and close FBI CHSs), CHS payment documents, and FBI records checks and database search

printouts on CHSs.  Def. Mem. at 17.  This is quantitatively and qualitatively different from the general descriptions about how the Best Buy employees interacted with the FBI – all that Plaintiff refers to.  And under *Parker* and its progeny, the withheld information that would reveal material provided by Best Buy CHSs is still protected under Exemption 7(D), notwithstanding their testimony revealing their interaction with the FBI.

Moreover, pursuant to the parties' earlier agreement in this case, Plaintiff's FOIA request does not seek "any publicly available information" concerning the *Rettenmaier* case, meaning "any information which was posted to a public docket in the *Rettenmaier* case."  Joint Status Report ¶ 1, ECF No. 7.  As a definitional matter, then, the "exact information" to which a Best Buy CHS publicly testified in the *Rettenmaier* litigation is not responsive to Plaintiff's request, and need not be disclosed under FOIA.  *See Competitive Enter. Inst. v. United States Envtl. Prot. Agency*, 12 F. Supp. 3d 100, 114 (D.D.C. 2014) ("Documents that are 'non-responsive' to a FOIA request . . . are simply not subject to the statute's disclosure requirements[.]").

## IV.    The FBI Properly Withheld Information Pursuant to Exemptions 6 and 7(C), Where the Information Would Constitute a Clearly Unwarranted Invasion of Privacy

Plaintiff asserts two narrow challenges to specific categories of the FBI's withholdings in the records produced, under Exemptions 6 and 7(C).  Pl. Mem. at 21-25.  First, Plaintiff contends that the FBI may not withhold the names of individuals who were convicted or pled guilty as a result of investigations originating from the Brooks, Kentucky, Best Buy facility.  Second, Plaintiff argues that the FBI must release the identifying information of Best Buy CHSs who have been publicly disclosed.

A.  Name of Individual Convicted of a Crime Was Appropriately Withheld

Plaintiff first contends that the FBI cannot withhold the names of any individuals

convicted of crimes which arose from investigations at the Brooks, Kentucky Best Buy facility,

pursuant to Exemptions 6 and 7(C).  Pl. Mem. at 21-24.  The FBI did withhold the name of one

individual who pled guilty to, or was convicted of, a crime arising out of an investigation at the

Brooks, Kentucky facility.  Supp. Hardy Decl. ¶ 4.  Defendant previously demonstrated that

certain names were withheld from the produced files because the individuals' privacy interest in

being associated with law enforcement investigations outweighed any minimal public interest in

disclosure.  *See* Def. Mem. at 25.  However, Plaintiff contends that individuals convicted of

crimes have minimal privacy interests in information related to their conviction, while the public

interest in disclosure is significant, meaning that disclosure of the withheld names is warranted

here.  Plaintiff is incorrect on all counts.

For support, Plaintiff relies solely on *Am. Civil Liberties Union v. U.S. Dep't of Justice*,

655 F.3d 1 (D.C. Cir. 2011), which held that the FBI could not withhold under Exemption 7(C) a

list of docket numbers, case names, and courts for criminal cases in which the government had

used warrantless cell phone tracking techniques.  Despite noting that Exemption 7(C) can extend

to protect convictions and public pleas, the court found that the privacy interests at stake were

diminished because the requested information was all public information – again, court docket

numbers and case names – that was readily available to the public through, *inter alia*, the

government's PACER system and its own press releases.  *ACLU*, 655 F.3d at 12 ("Neither the

specific list actually at issue, nor information that might be derived from the docket information

on that list, will disclose personal information that is not already publicly available and readily

accessible to anyone who might be interested in it.").  On the other side of the balance, the court

found a significant public interest in disclosure because disclosure of the cases in which the defendants were subject to warrantless cell phone tracking would shed light on the government's use of warrantless cell phone tracking by, for example, revealing the kinds of crimes the government uses cell phone tracking data to investigate. *Id*. at 13-14.

Far from supporting Plaintiff's position, *ACLU* demonstrates why the name of a convicted individual was properly withheld here.  Unlike the information at issue in *ACLU*, the information sought here – the name of an individual associated with specific investigative files, is not publicly available.  Indeed, the records at issue discuss the pre-arrest investigative efforts of the FBI, concerning how a specific case was handled prior to any public arrest and indictment.  Without revealing the name of the individual in these records, it is not publicly known whose arrest and conviction resulted from the interactions between a Best Buy CHS and the FBI set forth in the redacted documents.  *See* Supp. Hardy Decl. ¶ 6.  As a consequence, the individual mentioned in these sensitive, non-public files retains substantial privacy interests in the information therein.  *Cf. U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 762–63 (1989) (holding that convicted criminals had privacy interests in disclosure of their non-public "rap sheets").  Further, even where specific identifying information is widely available, such as in a public case name, the *ACLU* court suggested the district court could order that the case name be redacted to preserve the criminal defendant's privacy.  *ACLU*, 655 F.3d at 16.  This is precisely what the FBI has done here, albeit in records which are not widely available and would reveal far more than an anodyne case name.  *See Martin v. U.S. Dep't of Justice*, 488 F.3d 446, 457 (D.C. Cir. 2007) ("[A] person's privacy interest in law enforcement records that name him is not diminished by the fact that the events they describe were once a matter of public record.").

Moreover, Plaintiff fails to explain how disclosure of the withheld name would advance the public interest.  Plaintiff contends only that disclosure of the name would shed light on "how FBI agents used Best Buy employees in their investigation and prosecution of individuals who sent their computers or other devices to the company for repair."  Pl. Mem. at 23.  Left unstated is how the name of a convicted individual would reveal anything about the use of CHSs at Best Buy.  In *ACLU*, the court found that the sought criminal case information was pertinent to developing a better understanding of when warrantless cell-phone tracking had been utilized by the Government.  655 F.3d at 13 (noting that disclosure would "provide information about the kinds of crimes the government uses cell phone tracking data to investigate").  Here, however, the produced records provide the details concerning Best Buy CHS interactions with the FBI that Plaintiff is seeking.  Indeed, Plaintiff has not explained how the additional disclosure of the name of a convicted individual would reveal further substantive information about the use of CHSs at this Best Buy facility.  *See Fitzgibbon v. C.I.A.*, 911 F.2d 755, 768 (D.C. Cir. 1990) ("[T]he additional disclosure of the name would not further enlighten the public concerning the course, scope or purposes of the FBI's investigation.").  Thus, any minimal public interest in the disclosure of this individual's name is plainly outweighed by his/her privacy interest, such that the withholding under Exemptions 6 and 7(C) is proper.

> **B.  The FBI Properly Withheld the Names and/or Personal Information of Third-Party Commercial Institution Personnel, i.e., Best Buy personnel**

Plaintiff's only other argument concerning Exemptions 6 and 7(C) is that the FBI cannot rely on these exemptions to withhold the identifying information of certain Best Buy employees who were disclosed in the *Rettenmaier* litigation.  Pl. Mem. at 24-25.  This challenge is directed to the publicly disclosed CHSs, *id.* at 25, but Plaintiff also claims that Defendant has failed to specify whether it is only withholding the names of the publicly disclosed CHSs.  *Id.*  In order to

16

respond to this argument, we divide the employees at issue into two groups, CHS employees and non-CHS employees. Each group can be further divided into two sub-groups, those individuals publicly identified on the *Rettenmaier* docket and those not so identified.

First, concerning publicly identified CHSs, the FBI generally withheld their personal information, such as phone numbers, email addresses and their employment history (but not their names). Supp. Hardy Decl. ¶ 15.[6] It is beyond dispute that the publicly identified CHSs hold substantial privacy interests in such sensitive information. *See Shurtleff v. United States Envtl. Prot. Agency*, 991 F. Supp. 2d 1, 18 (D.D.C. 2013) (finding a "substantial privacy interest at stake" in the context of email addresses, in light of the potential "burden of unsolicited emails and harassment"). In addition, any public interest in the FBI's use of CHSs at computer repair facilities would not be furthered by this disclosure of highly personal information. *See* Supp. Hardy Decl. ¶ 15.

Second, the FBI withheld names and identifying information of Best Buy personnel who were not CHSs, but who had been publicly identified in the *Rettenmaier* litigation. Although these employees were publicly identified in the *Rettenmaier* litigation, they were not identified in connection with any FBI law enforcement records, as they are in the documents at issue here. Supp. Hardy Decl. ¶ 18.[7] These individuals have significant privacy interests in the disclosure of

---

[6] Following Plaintiff's cross-motion, the FBI made a supplemental production to Plaintiff. In this production, the FBI removed all withholdings under Exemptions 6 and 7(C) that had been applied to the names of CHSs who had been publicly identified in the *Rettenmaier* litigation, along with the 2009 work telephone number of a publicly identified CHS. *See* Supp. Hardy Decl. ¶ 15.

[7] The FBI released the names of non-CHS employees who were identified in the *Rettenmaier* docket in the context of a law enforcement document. However, the FBI did withhold the personal information of one such non-CHS employee, pursuant to Execmptions 6 and 7(C). *Id.* ¶ 17.

their names and identifying information in FBI law enforcement documents. *See Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 666 (D.C. Cir. 2003) (explaining that even "the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation" (citation omitted)). Further, the disclosure of non-CHS names and identifying information cannot further any public interest in the FBI's interaction with CHSs at computer repair facilities, and Plaintiff makes no attempt to suggest otherwise. *See* Supp. Hardy Decl. ¶ 17.

Finally, the FBI withheld the names and personal information of CHSs and non-CHS employees who were not publicly named on the *Rettenmaier* docket. Supp. Hardy Decl. ¶ 16. These individuals maintain significant privacy interests in the disclosure of their name and identifying information in the law enforcement records at issue. *See Schrecker*, 349 F.3d at 666 ("[P]ersons involved in law enforcement investigations - witnesses, informants, and the investigating agents – 'have a substantial interest in seeing that their participation remains secret.'"). Indeed, Plaintiff fails to dispute that the privacy interests of these individuals outweighs any public interest in disclosure. *See* Pl. Mem. at 25 (conceding that such withholdings "may be valid"); Supp. Hardy Decl. ¶ 16. Judgment should accordingly be granted to Defendant on these grounds.

## V.   The FBI Properly Invoked FOIA Exemptions Concerning Portions of the Withheld Informant Files

Plaintiff's final challenge is that the FBI has failed to substantiate several exemptions to portions of the informant files that were withheld in full. Pl. Mem. at 27-29. The Court need not reach this argument because, as noted above, Plaintiff does not challenge the FBI's withholding of the informant files in full pursuant to Exemptions 6 and 7(C). Absent a challenge to this

withholding of the files in full, any argument concerning the reserved withholdings of the files in part necessarily fails.

Even if this Court were to entertain Plaintiff's argument – that the FBI has not sufficiently detailed withholdings as to specific portions of the informant files – the result would be no different.  Contrary to Plaintiff's claims, an agency need not provide a page-by-page, detailed accounting of withheld information, where such an explanation would risk the very harms protected against by applicable FOIA exemptions.  *See, e.g., Talbot v. U.S. Dep't of State*, No. 17-CV-0588 (CRC), 2018 WL 2739921, at *10 (D.D.C. June 7, 2018) (holding that where redactions involved "intelligence sources and methods," general explanation was sufficient, as "more thorough explanations . . . could risk incurring the harm that the FOIA exemptions are designed to avoid"); *Am. Immigration Council v. United States Dep't of Homeland Sec.*, 30 F. Supp. 3d 67, 76 (D.D.C. 2014) ("To describe these techniques in greater detail here would risk disclosing them—'the very harm Exemption 7(E) seeks to prevent.'") (citation omitted).  Thus, where a detailed accounting of documents would pose cognizable harms, the Hardy Declaration's statements that certain types of documents are "typically" found in informant files, is no obstacle to the proper assertion of certain Exemptions for those documents.  *See Stein v. U.S. Dep't of Justice*, 134 F. Supp. 3d 457, 476 n.3 (D.D.C. 2015) (holding that the agency's use of the word "potentially . . . does not render the exemption inapplicable").[8]

---

[8] In any event, *Maydak* is "clearly grounded in finality concerns," ensuring that an agency does not invoke new FOIA exemptions on appeal.  *Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*, 296 F. Supp. 3d 109, 122–23 (D.D.C. 2017).  Accordingly, even if this Court were to reject all of the FBI's bases to withhold the informant files in full, and rejected all of the FBI's arguments as to why a detailed accounting of confidential informant files is harmful, the Court could request further briefing and/or an amended Vaughn index, for Defendant to provide whatever additional information may be necessary.

The Hardy Declaration explained at length why providing a description as to the contents of the withheld informant files would risk harms sought to be avoided pursuant to Exemptions 6, 7(C), 7(D) and 7(E).  For example, disclosure of the specific contents of each informant file would constitute an invasion of personal privacy, pursuant to Exemptions 6 and 7(C), as it would reveal the "breadth, depth, and nature of the cooperation" of a given informant with the FBI, which has "not been fully disclosed."  Hardy Decl. ¶ 123.  Similarly, disclosing the precise nature and number of documents in each informant file would "risk[] revelation of information about what was furnished by particular sources," the precise harm guarded against by Exemption 7(D).  *Id*. ¶ 115.  Finally, revealing the specific documents and their contents in each informant file would disclose how CHSs are utilized, maintained, and compensated, pursuant to FBI procedures.  *Id*. ¶ 127.  Disclosure of this information would not only risk the operational security of the FBI's informant program, but would risk a loss of confidence by current and future CHSs, as the FBI would be unable to guarantee the secrecy of a given CHS's relationship with law-enforcement.  *Id*. ¶ 128.  Each of these dangers to the FBI's informant program would plainly risk circumvention of the law, as required by Exemption 7(E).

Plaintiff has no response to the clear harms that would result from a more detailed description of the withheld informant files.  Here, the agency has "supplie[d] significantly more support" for its asserted withholdings, and the reasons as to why no more detail can be provided, "than the conclusory, 'cursory, equivocal, and inconsistent assertions' that the *Maydak* court deemed insufficient."  *Stein*, 134 F. Supp. 3d at 476 n.3.  This Court should accordingly enter judgment for Defendant as to all portions of the withheld informant files.

## CONCLUSION

For all the reasons set forth above, the FBI respectfully requests that the Court grant summary judgment in favor of Defendant on all of Plaintiff's claims.

CHAD A. READLER
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director
Federal Programs Branch

_/s/ Michael L. Drezner_____
MICHAEL L. DREZNER (VA Bar No. 83836)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.  Room 7310
Washington, D.C. 20530
Tel: (202) 514-4505
Fax: (202) 616-8470
Email: Michael.L.Drezner@usdoj.gov

Attorney for Defendant.

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2018 I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system, which sent notice of such filing to all parties.

/s/ Michael L. Drezner
MICHAEL L. DREZNER
Trial Attorney