**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ELECTRONIC FRONTIER FOUNDATION,

Plaintiff,

v.                                                    Civil Case No. 17-cv-1039-DLF

DEPARTMENT OF JUSTICE,

Defendants.

<u>**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**</u>

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................2

I.     The FBI Improperly Refused to Confirm or Deny the Existence of Responsive Records Beyond the Disclosures Made in *Rettenmaier.* .......................................2

II.    The Bureau Must Disclose Information Withheld About Best Buy Employees Who Were Publicly Identified. ...........................................................................5

    A.   The Bureau Has Waived Exemption 7(D) Claims Regarding Information Withheld in Released Documents and Informant Files. ................................6

    B.   The Bureau Has Waived Privacy Exemption Claims As a Basis For Withholding the Same Information...........................................................10

    C.   The Bureau Cannot Show That Disclosure of Informant Files Documenting Its Relationship With Best Buy Employees Would Pose a Risk to Circumvention of the Law as Required Under Exemption 7(E)......12

    D.   The Bureau Has Failed to Properly Segregate Releasable Information in the Informant Files .................................................................................13

    E.   The Bureau Has Failed to Properly Assert Additional Exemptions Regarding the Informant Files ...................................................................14

III.    Releasing Documents that Identify an Individual Convicted of a Crime Resulting from Material Found by Best Buy Employees Would Not Invade that Individual's Privacy…...........................................................................16

CONCLUSION....................................................................................................................19

i

# TABLE OF AUTHORITIES

## Cases

*ACLU v. CIA,*
  710 F.3d 422 (D.C. Cir. 2013)...........................................................................................4, 5

*\*ACLU v. Dep't of Justice,*
  655 F.3d 1 (D.C. Cir. 2011)............................................................................................12, 18

*\*Albuquerque Pub. Co. v. Dep't of Justice,*
  726 F. Supp. 851 (D.D.C. 1989)......................................................................................4, 13

*Am. Immigration Council v. Dep't of Homeland Security,*
  30 F. Supp. 3d 67 (D.D.C. 2014).........................................................................................15

*Borda v. U.S. Dep't of Justice,*
  245 F. Supp. 3d 52 (D.D.C. 2017).........................................................................................9

*Campbell v. Dep't of Justice,*
  1996 U.S. Dist. LEXIS 14996 (D.D.C. September 19, 1996)...................................................4

*Chesapeake Bay Foundation v. Army Corps of Engineers,*
  772 F. Supp. 2d 66 (D.D.C. 2010).......................................................................................11

*Cottone v. Reno,*
  195 F.3d 550 (D.C. Cir. 1999)............................................................................................11

*Davis v. U.S. Dep't of Justice,*
  968 F.2d 1276 (D.C. Cir. 1992).............................................................................................9

*\*Dow Jones & Co., Inc. v. Dep't of Justice,*
  908 F.2d 1006 (D.C. Cir. 1990)........................................................................................7, 9

*Goldstein v. Office of Indep. Counsel,*
  1999 U.S. Dist. LEXIS 22969 (D.D.C. July 29, 1999)...........................................................4

*Hall v. Dep't of Justice,*
  552 F. Supp. 2d 23 (D.D.C. 2008).......................................................................................11

*Jaffe v. CIA,*
  573 F. Supp. 377 (D.D.C. 1983)............................................................................................2

*King v. Dep't of Justice,*
  830 F.2d 210 (D.C. Cir. 1987).............................................................................................15

*Martin v. Dep't of Justice,*
　488 F.3d 446 (D.C. Cir. 2007)..........................................................................18, 19

*Maydak v. Dep't of Justice,*
　218 F.3d 760 (D.C. Cir. 2000)..........................................................................14, 15

*Mays v. Drug Enforcement Administration,*
　234 F.3d 1324 (D.C. Cir. 2000)........................................................................13, 14

*Mead Data Cent., Inc. v. Dep't of the Air Force,*
　566 F.2d 242 (D.C. Cir. 1977)................................................................................13

*\*Parker v. Dep't of Justice,*
　934 F.2d 375 (D.C. Cir. 1991)......................................................................7, 9, 10

*Petrucelli v. U.S. Dep't of Justice,*
　51 F. Supp. 3d 142 (D.D.C. 2014)............................................................................3

*Proctor v. Dep't of Justice,*
　72 F.3d 920 (table) (D.C. Cir. 1996)......................................................................10

*Rosenfeld v. Dep't of Justice,*
　57 F.3d 803 (9th Cir. 1995)....................................................................................13

*Shapiro v. Dep't of Justice,*
　893 F.3d 796 (D.C. Cir. 2018)..................................................................................4

*Showing Animals Respect & Kindness v. Dep't of the Interior,*
　730 F. Supp. 2d 180 (D.D.C. 2010)........................................................................12

*Stein v. Dep't of Justice,*
　134 F. Supp. 3d 457 (D.D.C. 2015)..................................................................15, 16

*Talbot v. U.S. Dep't of State,*
　No. 17-CV-0588 (CRC), 2018 WL 2739921 (D.D.C. June 7, 2018).....................15

## Other Authorities

Aaron Mackey, *Geek Squad's Relationship with FBI Is Cozier Than We Thought*, EFF
　Deeplinks (March 6, 2018)........................................................................................8

R. Scott Moxley, *FBI Used Best Buy's Geek Squad To Increase Secret Public Surveillance*,
　OC Weekly (March 8, 2017).....................................................................................17

Tom Jackman, *If a Best Buy technician is a paid FBI informant, are his computer searches
　legal?*, The Washington Post (Jan. 9, 2017).............................................................17

## INTRODUCTION

The opposition filed by the Federal Bureau of Investigation ("FBI") in this Freedom of Information Act ("FOIA") case demonstrates why the Bureau must process plaintiff Electronic Frontier Foundation's ("EFF") request and disclose records that it has previously refused to confirm or deny exist.  EFF's FOIA request seeks agency records documenting the extent to which the FBI directed, paid, or incentivized computer repair technicians employed by Best Buy and other companies to search customers' devices for illegal material.  Defendant Department of Justice moved for summary judgment (Dkt. No. 13), arguing in part that it could neither confirm nor deny that there were any records detailing the FBI's relationships with other computer repair companies.

EFF opposed defendant's motion, and cross-moved for summary judgment (Dkt. No. 14), demonstrating that the agency's so-called partial *Glomar* response was unsupported by law because it is well known that law enforcement use computer repair technicians to investigate crime.  Defendant's opposition and reply memorandum (Dkt. No. 18) argues that confirming whether records exist, including the names of other repair facilities or dates of the Bureau's interactions with them, could blunt the effectiveness the technique.  That concern does not justify a *Glomar* response.  The Bureau may have legitimate concerns about particular information that, if disclosed, could frustrate law enforcement investigations.  FOIA provides the FBI with the ability to redact or otherwise withhold that information under Exemption 7(E) so long as it meets its burden to justify non-disclosure.  FOIA does not permit the FBI to use Exemption 7(E) to broadly refuse to acknowledge that such records exist.  The Court should thus require the Bureau to process the part of EFF's request seeking these records, which will still afford the FBI an opportunity to withhold information it believes is exempt.

1

Additionally, the Court should order the disclosure of information about the Best Buy employees whom the Bureau has publicly identified as its informants, as well as information about another individual prosecuted as a result of the FBI's Best Buy informant program.

## ARGUMENT

### I.    The FBI Improperly Refused to Confirm or Deny the Existence of Responsive Records Beyond the Disclosures Made in *Rettenmaier.*

As plaintiff showed in its opening brief, Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment ("Pl. Mem.") at 8-13, the FBI's *Glomar* response, in which the Bureau refuses to confirm or deny whether records other than those identified in the *Rettenmaier* criminal prosecution may exist, cannot be sustained.  Exemption 7(E) – upon which the agency's *Glomar* claim rests – is properly asserted only where the investigative techniques and procedures at issue are "secret," "obscure [and] not known to the public."  *Jaffe v. CIA*, 573 F. Supp. 377, 387 (D.D.C. 1983).  Here, the claimed techniques and procedures – FBI use of computer repair technicians as "cooperating human sources" and informants – are neither secret nor obscure, and are very well-known to the public.

The Bureau has publicly acknowledged, both in the *Rettenmaier* criminal prosecution and in the records disclosed as a result of this litigation, that it has maintained relationships with individuals it describes as "confidential human sources," or informants, for the purpose of discovering child pornography on devices sent to computer repair facilities.  The FBI asserts that its public acknowledgement has been limited to the Best Buy facility in Brooks, Kentucky, in "the 2007-2016 timeframe," and that admitting the existence of records concerning other facilities, or a different time period, would result in harm of the kind Exemption 7(E) seeks to prevent.  In its opposition brief, the agency does not dispute that the use of computer technicians

2

as informants and human sources is a well-known technique in child pornography investigations.
Rather, the Bureau asserts that "even commonly known procedures may be protected from
disclosure if the disclosure could reduce or nullify their effectiveness."  Defendant's Opposition
to Plaintiff's Cross-Motion for Summary Judgment ("Def. Opp.") at 4, quoting *Petrucelli v. U.S.
Dep't of Justice*, 51 F. Supp. 3d 142, 171 (D.D.C. 2014) (other citations and internal quotation
marks omitted).

Plaintiff noted in its opening brief that any legitimate concerns about the effectiveness of
the FBI's investigative procedures can be addressed through more tailored means: the redaction
of specific information contained in responsive records, *e.g.* dates and identities of computer
repair facilities, based on a showing that the specific information can be withheld under
Exemption 7(E).  Pl. Mem. at 12-13.  The Bureau responds with the vague assertion that "while
the technique of the FBI using [sources] at a certain computer repair facility at one period in time
may be publicly known," complete withholding of any responsive material is appropriate
because "confirming or denying the existence of records showing the FBI's broader use of
[sources] would likely reduce the effectiveness of those techniques."  Def. Opp. at 5.  In essence,
the agency asks the Court to believe that, in the absence of the disclosure plaintiff seeks,
criminals would not think twice about delivering to computer repair facilities devices laden with
child pornography.  *See id.* at 5 (disclosure "could embolden criminals to continue their criminal
activities without fear of FBI investigation").

The Bureau's suggestion flies in the face of common sense and is not supported by law.
As plaintiff has shown, for at least twenty years reported cases have relied upon evidence
obtained through the well-known investigative technique at issue here, and several states have
explicit statutory provisions requiring computer technicians to report any suspected child

3

pornography they may encounter to law enforcement.  Pl. Mem. at 11.  Accepting the FBI's

argument would be akin to condoning the withholding of information "revealing" the fact that

the Bureau employs wiretapping, eavesdropping, photography and pretext telephone calls as

investigative techniques.  *But see Albuquerque Pub. Co. v. Dep't of Justice*, 726 F. Supp. 851,

857-858 (D.D.C. 1989); *Goldstein v. Office of Indep. Counsel*, 1999 U.S. Dist. LEXIS 22969,

*49-50 (D.D.C. July 29, 1999); *Campbell v. Dep't of Justice*, 1996 U.S. Dist. LEXIS 14996, *34

(D.D.C. September 19, 1996).

 Apparently recognizing the weakness of its vague "circumvention" claim, the FBI asks

the Court to merely accept its "considered judgment about the risk that criminals could use

information confirming or denying the FBI's use of [sources] more broadly to circumvent the

law."  Def. Opp. at 6.  Citing no authority, the agency asserts that "deference is owed" to that

"judgment."  *Id*.  In fact, judicial review is *de novo* and the burden is on the agency to

"demonstrate[] that the information withheld logically falls within the claimed exemption."

*Shapiro v. Dep't of Justice*, 893 F.3d 796, 799 (D.C. Cir. 2018) (citations omitted); *see also id*. at

801 (agency must meet "its burden of providing a logical explanation of how disclosing

[withheld information] could present a risk of circumvention of the law" under Exemption 7(E)).

Given the fact that law enforcement use of computer repair technicians as sources is a

longstanding and well-known technique, the FBI has failed to meet that burden here.

 Moreover, the D.C. Circuit has expressed skepticism and reversed overbroad agency

*Glomar* claims similar to the Bureau's.  *ACLU v. CIA*, 710 F.3d 422 (D.C. Cir. 2013).  The D.C.

Circuit has recognized the because "[t]he *Glomar* doctrine is in large measure a judicial

construct, an interpretation of FOIA exemptions that flows from their purpose rather than their

express language," it must be constrained by FOIA's text.  *Id*. at 431.  FOIA's text permits the

Bureau to withhold specific information regarding its use of computer repair technicians if it can show that the information could create a risk of circumvention of law.  It does not permit the FBI to leverage those potentially legitimate concerns into a refusal to even acknowledge that records exist.  Just as the CIA in *ACLU*, the FBI here asks this Court "to stretch that doctrine too far" and permit it to flout its obligations under FOIA to process records in response to plaintiff's request. *Id*.  The Court should decline the Bureau's invitation.

## II.     The Bureau Must Disclose Information Withheld About Best Buy Employees Who Were Publicly Identified.

Because the Best Buy employees publicly identified in the *Rettenmaier* prosecution all publicly disclosed that they regularly provided information on criminal leads to the Bureau, the Bureau cannot withhold information about them under FOIA Exemptions 7(D) and 6 and 7(C). The Bureau has also failed to meet its burden to withhold the records under Exemption 7(E) because, as plaintiff has shown, use of computer repair technicians as criminal investigation leads is a well-known law enforcement technique.

In its reply and supplemental declarations, the Bureau confirms that four Best Buy employees who worked as Confidential Human Sources and testified publicly in *Rettenmaier* disclosed that they regularly provided information to the Bureau while working at the Brooks, Kentucky Geek Squad repair facility.  Def. Opp. 11-13; Declaration of Special Agent Tracy Riley ¶¶ 5-8 ("Riley Decl.").[1]  The information these four Best Buy employees disclosed in

---

[1] In light of the Bureau's supplemental declarations and newly disclosed information released in this case, plaintiff understands that there are four former Best Buy employees whom the Bureau considers to be Confidential Human Sources (CHS) and who were publicly identified in the *Rettenmaier* prosecution.  *See* Def. Opp. at 17, n. 6.  Plaintiff's cross-motion indicated that it believed five Best Buy employees met this criteria, but the FBI has since confirmed that there were only four.  *See* Def. Opp. 11; Declaration of FBI Special Agent Tracey L. Riley (Dkt. No. 19-1) ("Riley Decl."), ¶ 10.

*Rettenmaier* went far beyond the fact that they provided information to the Bureau that was the subject of that particular prosecution.  Indeed, as plaintiff previously showed, those employees testified about a much broader relationship with the Bureau, including that they regularly provided information to the Bureau in other, specific criminal investigations by alerting the FBI to potential illegal material found on customers' devices.  Pl. Mem. at 18-21.  In light of such broad, specific public disclosure about these individuals and their relationship with the Bureau, the FBI cannot continue to withhold their informant files and other information in response to plaintiffs' FOIA request.

### A.     The Bureau Has Waived Exemption 7(D) Claims Regarding Information Withheld in Released Documents and Informant Files.

The Bureau must release information contained in the informant files that describes information the four identified Best Buy employees provided to the FBI to initiate criminal investigations because the Bureau has waived Exemption 7(D) with respect to that material.  The four Best Buy employees publicly identified in *Rettenmaier* as informants—Justin Meade, Randall Ratliff, Michael Hans, and Michael Rogers—all publicly confirmed that they regularly provided information to the Bureau in multiple criminal investigations that began when they found allegedly illegal material on customers' computers.[2]  And in both *Rettenmaier* and this case, the Bureau confirms that these four employees acted as informants for FBI investigations separate and apart from the *Retenmaier* prosecution during their employment at the Geek Squad

---

[2] In light of new evidence submitted by the Bureau, plaintiff agrees that the agency has shown that it expressly granted confidentiality to the informants at the Best Buy facility.  Riley Decl. ¶¶ 5-6.  Plaintiff thus only challenges the withholdings of information concerning the four Best Buy employees whom the FBI has publicly identified on grounds that the Bureau has waived its Exemption 6, 7(C), and 7(D) claims, as described in its initial cross-motion and discussed further here.  Pl. Mem. at 18-21.

repair facility in Brooks, Kentucky.  Def. Opp. at 11-13.  Thus, because "the exact information given to the FBI has already become public, and the fact that the informant gave the same information to the FBI is also public," the Bureau has waived its Exemption 7(D) claim.  *Parker v. Dep't of Justice*, 934 F.2d 375, 378-79 (D.C. Cir. 1991), quoting *Dow Jones & Co., Inc. v. Dep't of Justice*, 908 F.2d 1006, 1011 (D.C. Cir. 1990).

Both parties agree that the principles articulated *Parker* control.  *See* Pl. Mem. at 18; Def. Opp. at 11-12.  The parties further agree that *Parker* holds that public testimony, by itself, is not usually enough to waive claims of Exemption 7(D).  *Id.*  The Bureau, however, ignores that in *Parker* the D.C. Circuit affirmed its earlier decision in *Dow Jones & Co. v. Dep't of Justice*, 908 F.2d 1006, 1011 (D.C. Cir. 1990), that Exemption 7(D) can be waived when "the exact information given to the FBI has already become public, and the fact that the informant gave the same information to the FBI is also public." *Parker*, 934 F.2d at 378-79 (quoting *Dow Jones*, 908 F.2d at 1011).

The disclosures in *Rettenmaier* and in documents released in this case identifying the four Best Buy employees satisfy the standard articulated in *Dow Jones* and affirmed in *Parker*.  As plaintiff previously described, all four employees testified that in the course of their work, they routinely interacted with FBI agents and would contact the Bureau when they came across what they suspected to be illegal material on customers' electronic devices.  Pl. Mem. at 18-19; Declaration of Justin Meade ¶¶ 4-7 (Dkt. No. 15-4); Declaration of Randall Ratliff ¶¶ 3-7 ("Ratliff Decl.") (Dkt. No. 15-6); Declaration of Michael Hans ¶¶ 3-6 ("Hans Decl.") (Dkt. No. 15-8).  Additionally, two employees testified that they were paid by the FBI for providing information, with at least one employee paid prior to the *Rettenmaier* investigation, which began in 2011.  *See* Ratliff Decl. ¶ 7 ("I was paid $500 in 2011 by Special Agent Tracey Riley."); Hans

7

Decl. ¶ 6 ("I received money from the FBI on one occasion in 2008."). Public disclosure in the employees' testimony shows that they furnished information to the Bureau about a number of criminal investigations that transcended their service as informants in *Rettenmaier*. The FBI confirmed this ongoing relationship in both *Rettenmaier* and this case. Yet despite the employees' public acknowledgements, the Bureau continues to withhold the same information that these employees provided to the FBI. Def. Opp. at 11-13.

The Bureau argues this withholding is proper because the information provided by the Best Buy employees contains "the entire source material provided by a confidential source and can span multiple investigations." *Id*. at 12. But as described above, the employees and the Bureau publicly disclosed that their relationship spanned multiple investigations that originated from the Geek Squad facility in Brooks, Kentucky. This long-term relationship was confirmed by documents released in this case. *See* Aaron Mackey, *Geek Squad's Relationship with FBI Is Cozier Than We Thought*, EFF Deeplinks (March 6, 2018) (describing documents showing that in 2008, Best Buy hosted an FBI meeting at its repair facility and provided a tour for attendees).[3]

The waiver goes far beyond "general descriptions about how Best Buy employees interacted with the FBI," as the Bureau incorrectly claims. Def. Opp. 13. The documents released in this case, including those re-processed after plaintiff filed its cross-motion for summary judgment, identify particular Best Buy employees and disclose their work with the Bureau on other investigations beyond the *Rettenmaier* prosecution. Supplemental Declaration of David Sobel ("Sobel Supp. Decl."), Exhibits 1-5. For example:

---

[3] *Available at* https://www.eff.org/deeplinks/2018/03/geek-squads-relationship-fbi-cozier-we-thought.

- Best Buy employee Justin Meade is described as a source of information for an investigation occurring in 2008 that involved a computer sent to the facility from Dublin, California, and a 2009 investigation involving a computer from Chicago. Sobel Supp. Decl., Exhibits 1, 2.

- Michael Hans is listed as the Best Buy employee who provided information to the Bureau about a different investigation in 2008 concerning a computer sent to the facility from West Patterson, New Jersey. Sobel Supp. Decl., Exhibit 3.

- In two different 2009 investigations, Randy Ratliff is listed as the source who met with FBI agents regarding a device from Charlotte, North Carolina and another device from New Orleans. Sobel Supp. Decl., Exhibits 4, 5.

This information, along with the testimony provided by all four employees in *Rettenmaier*, waives the Bureau's claims under Exemption 7(D) for precisely the reasons the D.C. Circuit in *Parker* and *Dow Jones* recognize: the Bureau and these individuals have publicly disclosed that they are the sources for the investigations that are described in the records at issue in this case. *Parker*, 934 F.2d at 378-79.[4]

The cases relied upon by the Bureau to continue to withhold information on the four Best Buy employees do not support its position. As plaintiff previously explained, Plaintiff Mem. at 20, *Borda v. U.S. Dep't of Justice*, 245 F. Supp. 3d 52 (D.D.C. 2017) applies *Parker*'s rule that testimony of an informant generally is not enough to waive Exemption 7(D). *Id.* at 61. The

---

[4] To the extent that plaintiff is required to point to specific information in the public domain that demonstrates a waiver, it has done so previously and does so once more here. *See* Plaintiff Mem. at 18-19. Plaintiff has thus met its initial burden of production under *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992), despite the Bureau's argument to the contrary. Def. Opp. at 12.

same principle is repeated in the D.C. Circuit's unpublished *per curiam* decision *Proctor v. Dep't of Justice*, 72 F.3d 920 (table) (D.C. Cir. 1996) that the Bureau cites in its reply. Def. Opp. at 12. As explained above, waiver here is based on both public testimony and disclosed information that details other information provided by the Best Buy employees *about other investigations* throughout the course of their time as informants. *Parker* explicitly recognized this as grounds for waiver of Exemption 7(D). *Parker*, 934 F.2d at 378-79.[5]

Finally, to the extent that there is non-public information in the informant files that neither the Best Buy employees nor the Bureau have publicly disclosed, that information may be redacted. *See* Def. Opp. at 12-13 (describing that the files could contain, among other things, photos of informants, source maintenance documents, and FBI database search printouts). As explained below, segregating that material and disclosing the non-exempt portion is what FOIA requires.

B.     **The Bureau Has Waived Privacy Exemption Claims As a Basis For Withholding the Same Information.**

The public disclosure of the Best Buy employees names in *Rettenmaier* and in records released in this case also waive application of FOIA Exemptions 6 and 7(C) to the withheld informant files and any other material that identifies the four employees. Plaintiff previously demonstrated that the Bureau had waived application of Exemptions 6 and 7(C) with respect to records concerning these individuals, including their informant files, by publicly identifying that

---

[5] The fact that plaintiff agreed to limit production of records in this case to materials not publicly disclosed in the *Rettenmaier* prosecution is irrelevant to the waiver issue. Def. Opp. at 13. Whether such records are "non-responsive" to the FOIA request at issue here is beside the point. As explained above, the records disclosed in *Rettenmaier* support plaintiff's argument that the Bureau has waived reliance on Exemption 7(D) precisely because they have been publicly disclosed.

they served as informants in the *Rettenmaier* prosecution.  Pl. Mem. at 24-25; *Chesapeake Bay Foundation v. Army Corps of Engineers*, 772 F. Supp. 2d 66, 72 (D.D.C. 2010) (quoting *Cottone v. Reno*, 195 F.3d 550, 554 (D.C. Cir. 1999)); *Hall v. Dep't of Justice*, 552 F. Supp. 2d 23, 30-31 (D.D.C. 2008).[6]

Both *Hall* and *Cheseapeake Bay Foundation* do not permit the Bureau to withhold in full the informant files of the four Best Buy employees it has publicly identified as informants.  The Bureau implicitly acknowledged that it has waived the privacy exemption claims with respect to the four Best Buy employees when it reprocessed documents and unredacted those individuals' names from records previously disclosed to plaintiff.  Def. Opp. at 17, n. 6.  Yet the Bureau maintains that the same exemptions allow it to fully withhold those individuals' informant files. Def. Opp. at 18.  But it is illogical to acknowledge waiver of Exemptions 6 and 7(C) with respect to some documents that identify these four employees but not to other documents that identify the very same individuals.  The waiver here is the result of the public identification of specific Best Buy employees as FBI informants, and it applies equally to all records responsive to plaintiff's request.

The Bureau does not respond to plaintiff's waiver argument, much less explain why it reprocessed some documents that identified the four Best Buy employees but not their informant files.  Instead, the Bureau argues that Exemptions 6 and 7(C) justify withholding personal information about these individuals such as their phone numbers, email addresses, and

---

[6] The Bureau's argument that plaintiff does not challenge withholding of the informant files under Exemption 6 & 7(C) ignores this portion of plaintiff's cross-motion.  Def. Opp. at 2, 18. To be clear, plaintiffs have challenged those withholdings, and the Bureau recognized as much in attempting to justify its continued withholdings under Exemptions 6 and 7(C) of publicly identified Best Buy employees who served as informants.  Def. Opp. at 16-18.

employment history.  Def. Opp. at 17.  As explained below, however, the Bureau's concerns

about disclosing that specific information cannot be used to withhold the informant files in full.[7]

Moreover, as plaintiff previously demonstrated, disclosure of the informant files of the

four Best Buy employees publicly identified in *Rettenmaier* under the test for Exemptions 6 and

7(C) is appropriate because the public interest in disclosure outweighs the privacy interest.  Pl.

Mem. at 25.  Because the Bureau has already identified these individuals as informants, the "cat

is out of the bag" and they have a *de minimus* privacy interest in the informant files.  *Showing*

*Animals Respect & Kindness v. Dep't of the Interior*, 730 F. Supp. 2d 180, 191 (D.D.C. 2010).

The public interest in learning more about how the government cultivated and maintained these

individuals as informants is substantial, as it would shed light on the conduct of government

officials.  *ACLU v. Dep't of Justice*, 655 F.3d 1, 12 (D.C. Cir. 2011).

**C.      The Bureau Cannot Show That Disclosure of Informant Files Documenting
          Its Relationship With Best Buy Employees Would Pose a Risk to
          Circumvention of the Law as Required Under Exemption 7(E).**

For the same reasons described in plaintiff's cross-motion and above in Section I, the FBI

cannot withhold records documenting its relationship with the four Best Buy employees at issue

here because using computer repair technicians in investigations is a well-known law

enforcement technique.  In addition to relying on Exemption 7(E) to justify its *Glomar* response

to parts of plaintiff's request, the Bureau also uses it to withhold certain information in records it

processed, such as the informant files it withholds in full.  Def. Mem. 22, 27-31; Def. Opp. at 20.

---

[7] Plaintiffs do not seek disclosure of these individuals' phone numbers, email addresses, or
employment history and would not challenge redactions to that information.  That specific
information contained in the informant files can be redacted and the remaining information
released.

It is axiomatic that well-known or publicly known law enforcement techniques cannot be withheld under Exemption 7(E).  *See Albuquerque Pub. Co.*, 726 F. Supp. at 857-858 (D.D.C. 1989); *Rosenfeld v. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995) (affirming application of the "routine-technique exception to Exemption 7(E)").  It is well-known that the FBI uses computer repair technicians in its investigations, including specifically that it regularly relied upon Best Buy computer repair technicians at the Kentucky repair facility as leads in their investigations.  In light of the technique being well-known, the Bureau cannot rely upon Exemption 7(E) to withhold in full the informant files at issue here.  And, as explained below, to the extent that the informant files contain other non-public techniques or information that would otherwise create a circumvention risk, the FBI should redact that information and release the remainder.

**D.**      **The Bureau Has Failed to Properly Segregate Releasable Information in the Informant Files.**

The Bureau's continued withholding of the informant files in full demonstrates that it has failed to segregate exempt from non-exempt material as required under FOIA.  The segregability requirement ensures that agencies do not use exemption claims to broadly shield all records from disclosure, as the "focus of the FOIA is information, not documents."  *Mead Data Cent., Inc. v. Dep't of the Air Force,* 566 F.2d 242, 260 (D.C. Cir. 1977).  Rather than comply with FOIA's segregability requirement, the Bureau seeks to withhold informant files in full under Exemptions 6, 7(C), 7(D), and 7(E).  For the reasons discussed above, those arguments either fail or do not allow for such broad withholdings.

FOIA "permits the government to withhold only the specific information to which [an exemption] applies, not the entire page or document in which the information appears."  *Mays v. Drug Enforcement Administration*, 234 F.3d 1324, 1327 (D.C. Cir. 2000).  The Bureau's relies

on Exemptions 6 and 7(C) to withhold the informant files in full because specific personal information is contained within them, such as phone numbers, email addresses and employment history.  Def. Opp. at 17.  Plaintiffs do not dispute that such personal information can be properly withheld under Exemptions 6 and 7(C), but FOIA requires that the specific information be redacted and the remaining record be released.  Similarly, the Bureau has withheld information in the informant files under Exemption 7(D) that it claims was not publicly disclosed, such as pictures of the informants and records documenting the FBI's maintenance of the relationships. Def. Rep. at 12. To the extent that such information was not publicly disclosed, and may be properly withheld under Exemption 7(D), the Bureau should redact it and release the remaining non-exempt portions of those files.  FOIA, however, does not permit the Bureau to turn the proper withholding of specific information into a shield for all other, non-exempt information. *Mays*, 234 F.3d at 1327.

### E.   The Bureau Has Failed to Properly Assert Additional Exemptions Regarding the Informant Files.

The Bureau cannot hold in reserve additional arguments regarding other FOIA exemptions that may apply to the informant files in the hopes of getting a second bite at the apple should their initial claims be found wanting.  The Bureau falls short of asserting that specific portions of the informant files are exempt under Exemptions 3, 6, 7(A), 7(C), 7(D), and 7(E) because the FBI failed to adequately substantiate those claims.  Pl. Mem. at 27-29; *Maydak v. Dep't of Justice*, 218 F.3d 760, 764-65 (D.C. Cir. 2000).  Defendant's failure to substantiate these exemption claims because they are all raised as hypotheticals, such as stating that certain exempt materials "are likely" or "are typically" present in the informant files.  Declaration of David Hardy ¶¶ 143-46 ("Hardy Decl.").

14

The Bureau deflects from this inadequacy by arguing that to describe the basis for withholding the records further would result in precisely the types of harm that the exemptions are designed to protect.  Def. Opp. 19-20.  But that misses the mark because, even if the Bureau had adequately described the potential harm that would result from disclosure, the FBI has failed to identify the particular material that it believes is exempt pursuant to those claims.  *Maydak*, 218 F.3d at 765.  FOIA requires the Bureau to state in a declaration or elsewhere that one or more of the informant files actually contains, for example, intelligence sources or methods or information about pending law enforcement proceedings.  Specifically identifying that such material is present in the informant files at issue here would not harm the Bureau.  Rather, it is a baseline procedural requirement the FBI must meet.  *See King v. Dep't of Justice*, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (holding that FOIA requires agencies to specifically detail and justify their withholding claims "to ensure meaningful review of an agency's claim to withhold information subject to a FOIA request").

Rather than linking its exemption claims to specific withheld material, the Bureau says only that such material *may* be present in the informant files at issue.  Def. Mem. at 22-23; Def. Opp. at 18-20.  The D.C. Circuit has held, however, that describing "the potential applicability of other exemptions" falls short of what the law requires.  *Maydak*, 218 F.3d at 765.  The FBI's reliance on *Talbot v. U.S. Dep't of State*, No. 17-CV-0588 (CRC), 2018 WL 2739921 (D.D.C. June 7, 2018) and *Am. Immigration Council v. Dep't of Homeland Security*, 30 F. Supp. 3d 67, 76 (D.D.C. 2014), Def. Opp. at 19, is thus incorrect because neither case holds that the Bureau can substantiate hypothetical claims that may not apply to material it seeks to withhold.

The Bureau relies on *Stein v. Dep't of Justice*, 134 F. Supp. 3d 457, 476 n.3 (D.D.C. 2015) to argue that it has adequately demonstrated that these additional exemptions apply.  Def. Opp. at 19.  But *Stein* underscores the FBI's deficiency in this case.  In *Stein*, the language used

15

by the government to withhold records under Exemption 5 first explicitly described the materials

to which they were claiming the exemptions.  *Id*. at n.3.  It then described the substance of the

basis for withholding them: that it would potentially harm government attorneys by disclosing

their legal tactics and arguments.  *Id*.  Here, by contrast, the Bureau fails to identify which

portions of the informant files, if any, contain any material that would be subject to its exemption

claims.  The Bureau instead uses probabilistic language in Mr. Hardy's declaration and its brief

to discuss the potential application of the various exemptions to material that may be present in

the informant files.  Def. Mem. at 22-23; Hardy Decl. ¶¶ 143-46.  The FBI here states that these

exemptions might apply, which is different than the withholding claim in *Stein* that identified the

specific material being withheld under the exemption and articulated the potential harm that

would result from disclosure.  The Bureau could cure this issue by affirmatively stating that such

material is indeed present in the informant files at issue here, but it has not done so.

**III.    Releasing Documents that Identify an Individual Convicted of a Crime Resulting
from Material Found by Best Buy Employees Would Not Invade that Individual's
Privacy.**

The Bureau has failed to meet its burden to withhold under Exemption 7(C) the name of

an individual who was convicted or pleaded guilty based on evidence gleaned from its

interactions with Best Buy employees.  Def. Opp. 14-16.  Plaintiff agrees with the Bureau that

without public disclosure of the individual's identity, "it is not publicly known whose arrest and

conviction resulted from the interactions between a Best Buy CHS and the FBI set forth in

redacted documents."  *Id*. at 15 (citing Supplemental Declaration of David Hardy, ¶ 6 (Dkt. No.

19-2)).  It is precisely because disclosure will shed light on the interactions between a Best Buy

employee and the FBI that led to a criminal conviction or guilty plea that the public interest in

disclosing the name of the individual is significant and outweighs the *de minimus* privacy interest in withholding the name.

The FBI's use of Best Buy employees as informants who supplied leads based on material they found on customers' computers is controversial, a fact demonstrated by the public disclosure of this arrangement in the *Rettenmaier* investigation.  *See* Pl. Mem. at 11-12 (collecting news coverage of the FBI's use of Best Buy employees as informants); *see also* Tom Jackman, *If a Best Buy technician is a paid FBI informant, are his computer searches legal?*, The Washington Post (Jan. 9, 2017);[8] R. Scott Moxley, *FBI Used Best Buy's Geek Squad To Increase Secret Public Surveillance*, OC Weekly (March 8, 2017).[9]  As the news stories detail, the FBI's reliance on Best Buy employees as a basis for their investigations raised significant questions about whether the employees were acting as agents of the government, and potentially violating customer's Fourth Amendment rights as a result.  The disclosure of the FBI's relationship with Best Buy employees at the Brooks, Kentucky facility in the *Rettenmaier* prosecution thus led to scrutiny of this government activity.

The same public interest will result with disclosure of the name of the individual the FBI withholds here.  Specifically, linking the individual's name in the records here with the court records detailing the prosecution will shed further light on the conduct of the Bureau and its interactions with Best Buy employees.  Pl. Mem. at 22-23.  It will allow the public to scrutinize, among other things, to what extent the Bureau's relationship with Best Buy employees was

---

[8] *Available at* https://www.washingtonpost.com/local/public-safety/if-a-best-buy-technician-is-a-paid-fbi-informant-are-his-computer-searches-legal/2017/01/09/f56028b4-d442-11e6-9cb0-54ab630851e8_story.html?utm_term=.3c9da21f0b38.
[9] *Available at* https://www.ocweekly.com/fbi-used-best-buys-geek-squad-to-increase-secret-public-surveillance-7950030/.

known by the defendant, whether the investigation raised similar concerns as those in *Rettenmaier*, whether the defendant challenged the search of his devices that led to the individual's conviction or instead pleaded guilty.  Scrutiny of the government activity leading to the prosecution is not possible because, as Defendant admits, the extent of the relationship between Best Buy employees and the FBI in this particular case is not publicly known.  Disclosure of the information is thus in the public interest.

Against this significant public interest, disclosure of the individual's name in these records is *de minimus* in light of the individual's conviction or guilty plea.  *ACLU*, 655 F.3d at 12, 16.  The Bureau argues that the privacy interest is substantial because the records detail pre-prosecution records that contain sensitive information not known to the public.  Def. Opp. at 15.  The Bureau is incorrect.  First, the Bureau misreads the D.C. Circuit's discussion in *ACLU* about the potential redaction of individual names from court docket numbers.  655 F.3d at 16.  In discussing that possibility, the court acknowledged the practical reality that even if it were to order the redaction of individuals' names and disclose the case numbers associated with their prosecutions, the redactions would prove illusory because the individuals would nonetheless be identified in the court records.  *Id*.  Acknowledging this outcome, the court rejected it as a basis for withholding information under Exemption 7(C) and instead drew a distinction between individuals who were convicted or pleaded guilty and those who were not.  *Id*.  As plaintiff demonstrated previously, this distinction was sensible and requires disclosure of the name at issue here.

The Bureau is also incorrect to rely on *Martin v. Dep't of Justice*, 488 F.3d 446 (D.C. Cir. 2007) to support its withholding of individual's name in this case.  That case dealt with a request for law enforcement records involving a third-party witness in a criminal prosecution who was

allegedly investigated but not charged with a crime. *Id.* at 451.  The case is easily distinguishable because the request here concerns an individual who was convicted or pleaded guilty, aligning this case with *ACLU* and the diminished privacy interests that such individuals have once they have been convicted or pleaded guilty.  The concerns in *Martin* discussed by the Bureau, Def. Opp. at 15, are thus inapplicable to this case.

## CONCLUSION

For the reasons discussed above, and in plaintiff's opening brief, the Court should grant plaintiff's cross-motion for summary judgment.


Dated: September 5, 2018

Respectfully Submitted,


_____*/s/ David L. Sobel*_____
DAVID L. SOBEL
D.C. Bar No. 360418
Electronic Frontier Foundation
5335 Wisconsin Avenue, N.W.
Suite 640
Washington, DC  20015
(202) 246-6180

AARON MACKEY
D.C. Bar No. 1017004
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333

*Attorneys for Plaintiff*
ELECTRONIC FRONTIER FOUNDATION