**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

ELECTRONIC FRONTIER FOUNDATION,

    *Plaintiff*,

    v.

DEPARTMENT OF JUSTICE,

    *Defendant*.

No. 17-cv-1039 (DLF)

---

**MEMORANDUM OPINION AND ORDER**

During a criminal prosecution, the Federal Bureau of Investigation (FBI) disclosed that computer repair technicians at a Best Buy facility in Kentucky had served as confidential informants.  After this revelation, Electronic Frontier Foundation (EFF) submitted a Freedom of Information Act (FOIA) request seeking records about the FBI's use of cooperating computer technicians.  The FBI responded to EFF's FOIA request by refusing to confirm or deny the existence of most of the requested records, withholding in full some records, and processing and disclosing redacted versions of other records.  Both parties have now cross-moved for summary judgment.  For the reasons that follow, the Court will grant in part and deny in part the government's motion, and it will deny EFF's cross-motion.

## I.    BACKGROUND

EFF's FOIA request was prompted by disclosures the FBI made in *United States v. Rettenmaier*, No. 14-cr-0188 (C.D. Ca. filed Nov. 12, 2014), a child pornography case.  In *Rettenmaier*, a Best Buy employee at a data recovery facility in Brooks, Kentucky discovered a suspicious image of a child while repairing Rettenmaier's computer.  Gov't's Br. at 1–2, Dkt. 13-2; EFF's Br. at 2, Dkt. 15; Hardy Decl. ¶ 5, Dkt. 13-3.  The employee's supervisor alerted the

FBI, which triggered a criminal investigation that led to Rettenmaier's prosecution. Gov't's Br. at 2; EFF's Br. at 2.

In December 2016, the federal judge presiding over the case issued an order that cited evidence about the FBI's cooperation with Best Buy employees. Hardy Decl. ¶ 5; *id.* Ex. A at 3, Dkt. 13-4. It is undisputed that the FBI ultimately revealed that it had used eight informants at Best Buy's Brooks, Kentucky data-recovery facility from 2007 through 2016, and that it revealed the names of four of those informants. Gov't's Statement of Facts ¶ 14, Dkt. 13-1; EFF's Statement of Facts ¶ 2, Dkt. 15-9; EFF's Reply at 5 n.1, Dkt. 21.

On February 2, 2017, EFF emailed a FOIA request to the FBI that referenced the order in *Rettenmaier* and sought "[a]ll internal memoranda or other documentation regarding the use of informants . . . at any Best Buy facility," "[a]ll internal memoranda or other documentation regarding FBI training of Best Buy personnel in the detection and location of child pornography, or other material, on computers brought to Best Buy for repair," "[a]ll recruiting material from the FBI directed to Best Buy personnel," and "[a]ll memoranda, guidance, directives, or policy statements concerning the use of informants . . . at any computer repair facilities in the United States." Hardy Decl. Ex. A at 3.[1] In responding to the request, the FBI construed the term "informant" to mean "an individual with whom the FBI has an established relationship, who ha[s] a specific source identification number used to obscure [his] identi[t]y in investigatory records, and ha[s] a separate distinct file containing documentation of their informant history, which has restricted access within the FBI." *Id.* ¶ 3 n.1.

---

[1] EFF's request also referred to "confidential human sources," which the FBI construed to be synonymous with "informant." Hardy Decl. ¶ 3 n.1.

The FBI initially invoked FOIA exemption 7(E) as the basis for a *Glomar* response[2] that neither confirmed nor denied the existence of responsive records.  Gov't's Statement of Facts ¶ 5; *see also* EFF's Statement of Facts ¶ 1.  But it eventually agreed to modify that response in light of the disclosures made during the *Rettenmaier* prosecution.  Gov't's Statement of Facts ¶ 10; *see also* EFF's Statement of Facts ¶ 1; Joint Mot. to Vacate Summ. J. Briefing Schedule ¶ 2, Dkt. 8.  Because the government acknowledged in *Rettenmaier* that the FBI used eight confidential informants at the Kentucky Best Buy from 2007 to 2016, it responded to the request for "internal memoranda or other documentation regarding the use of [confidential] informants . . . at any Best Buy" by searching for responsive documents "concerning the [confidential] informants . . . at the Brooks, Kentucky facility from 2007 to 2016."  Hardy Decl. ¶ 53 (internal quotation marks omitted).  As for the request for training materials, it explained that it had already disclosed, in response to an inquiry by the *Rettenmaier* court, that it had no records from the relevant Kentucky field office related to "training conducted for Best Buy employees in the detection and location of child pornography on computers brought to Best Buy for repair, for the time period of 2008 through February 2012."  *Id.* ¶ 58 (internal quotation marks omitted).  Similarly, the FBI acknowledged that it had disclosed during the *Rettenmaier* prosecution "that it [had] searched [the relevant field office's] records for any recruiting material directed to Best Buy personnel between 2008 and February 2012" and that it had failed to locate any responsive records.  *Id.* ¶ 60 (alteration adopted and internal quotation marks omitted).  It maintained its

---

[2] The *Glomar* response takes its name from the *Hughes Glomar Explorer*, "a ship built (we now know) to recover a sunken Soviet submarine, but disguised as a private vessel for mining manganese nodules from the ocean floor."  *Elec. Privacy Info. Ctr. v. NSA*, 678 F.3d 926, 931 n.4 (D.C. Cir. 2012) (internal quotation marks omitted).  A *Glomar* response is appropriate when "to answer the FOIA inquiry would cause harm cognizable under an applicable statutory exemption."  *Id.* (internal quotation marks omitted).

*Glomar* response for all training and recruiting material not covered by those two previous searches. *Id.* ¶¶ 58, 60.  Finally, the FBI maintained its *Glomar* response to the extent any records responsive to the final part of EFF's request for "memoranda, guidance, directives, or policy statements concerning the use of [confidential] informants," *id.* Ex. A at 3, were not covered by the first part of its request, *id.* ¶ 62.

The FBI invoked exemptions 6, 7(A), 7(C), 7(D), and 7(E) to redact or withhold the records no longer covered by its *Glomar* response.  *Id.* ¶¶ 66, 113.  It "categorically" withheld the "informant files concerning th[e] eight [confidential informants] specifically acknowledged in the *Rettenmaier* litigation."  *Id.* ¶ 113.  Of the remaining records, it released 14 pages in full and 151 pages in part.  *Id.* ¶ 112.  It also withheld 78 pages in full because "all information on these pages was either fully covered by one or more of the cited FOIA exemptions or . . . any non-exempt information on these pages was so intertwined with exempt material that no information could be reasonably segregated for release."  *Id.* ¶ 112(c).  The FBI later supplemented its disclosures after EFF filed its cross-motion by "removing redactions pursuant to Exemptions 6 and 7(C) where they had withheld (1) names of [confidential informants] who had been publicly identified in the *Rettenmaier* litigation, and (2) the 2009 work phone number of one [confidential informant] who had been publicly identified."  Suppl. Hardy Decl. ¶ 15, Dkt. 18-2.

To justify its withholding decisions, the FBI submitted, among other things, two declarations by David M. Hardy, a section chief in the FBI's Records Management Division, *see id.*; Hardy Decl., a declaration by Special Agent Tracey L. Riley, *see* Riley Decl., Dkt. 19-1, and a *Vaughn* index, *see Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), that delineated the

redactions made to each page of the records that were not either categorically withheld as part of

an informant file or covered by the partial *Glomar* response, Hardy Decl. Ex. K, Dkt. 13-4.

## II.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When a

federal agency moves for summary judgment in a FOIA case, all facts and inferences must be

viewed in the light most favorable to the requester, and the agency bears the burden of showing

that it complied with FOIA.  *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir.

2009).

To prevail under Rule 56, a federal agency "must prove that each document that falls

within the class requested either has been produced, is unidentifiable, or is wholly exempt from

[FOIA's] inspection requirements.'"  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per

curiam) (internal quotation marks omitted).  "The system of disclosure established by the FOIA

is simple in theory[:] [a] federal agency must disclose agency records unless they may be

withheld pursuant to one of the nine enumerated exemptions listed in [5 U.S.C.] § 552(b)."  *DOJ*

*v. Julian*, 486 U.S. 1, 8 (1988).  The agency bears the burden of justifying the application of any

exemptions, "which are exclusive and must be narrowly construed."  *Mobley v. CIA*, 806 F.3d

568, 580 (D.C. Cir. 2015).

Federal courts rely on agency affidavits to determine whether an agency complied with

FOIA.  *Perry*, 684 F.2d. at 126.  Agency affidavits are entitled to a presumption of good faith,

*SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and a court may grant summary

judgment based on an affidavit if it contains reasonably specific detail and is not called into

question by contradictory record evidence or evidence of bad faith, *Judicial Watch v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013).   It is well established that "the vast majority of FOIA cases can be resolved on summary judgment."  *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

## III.   ANALYSIS

EFF does not dispute that the FBI adequately searched for records associated with the *Rettenmaier* disclosures, or that it appropriately applied several exemptions to the records located in that search.  EFF's Br. at 4–5.  Instead, EFF focuses on a few specific applications of a handful of exemptions.  The Court divides its analysis into three parts: first, whether the FBI satisfied its burden to justify (a) a partial *Glomar* response for documents unrelated to the disclosures made during the *Rettenmaier* prosecution and (b) redactions under exemption 7(E); second, whether exemption 7(C) protects the name of an individual who was convicted based on information obtained from the Kentucky Best Buy; and finally, whether the FBI satisfied its burden to justify the categorical withholding of the informant files under exemptions 6, 7(C), 7(D), and 7(E).

### A.   Exemption 7(E)

Exemption 7(E) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7).  The exemption does not ordinarily protect "routine techniques and procedures already well known to the public."  *Founding Church of Scientology of Washington, D.C. v. NSA*, 610 F.2d 824, 832 n.67 (D.C. Cir. 1979) (internal quotation marks omitted); *see also*

*Judicial Watch v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004).  It does, however, protect "confidential details of . . . program[s]" if only their "general contours [are] publicly known." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1112 (D.C. Cir. 2007) (citing *Blanton v. DOJ*, 64 Fed. App'x 787, 788–89 (D.C. Cir. 2003) (per curiam)); *see also Shapiro v. DOJ*, 893 F.3d 796, 801 (D.C. Cir. 2018) (permitting the government to withhold documents that would disclose the way in which the FBI uses a particular publicly known database).  In this Circuit, exemption 7(E) applies if the disclosure of information related to even "commonly known procedures" could "reduce or nullify their effectiveness." *Vazquez v. DOJ*, 887 F. Supp. 2d 114, 116 (D.D.C. 2012) (internal quotation marks omitted), *aff'd*, No. 13-5197, 2013 WL 6818207, at *1 (D.C. Cir. Dec. 18, 2013) (per curiam).

Exemption 7(E) "sets a relatively low bar for the agency to justify withholding." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).  "Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (alterations adopted and internal quotation marks omitted).  The exemption "looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Id.* at 1193.

The FBI invoked exemption 7(E) to justify three withholding decisions.  First, it invoked the exemption to justify a partial *Glomar* response and refuse to confirm or deny the existence of any documents unrelated to the use of confidential informants "at the Best Buy, Brooks,

Kentucky facility for the period of 2007 to 2016" as well as the existence of any recruiting or training documents beyond the disclosures made during the *Rettenmaier* prosecution.  Hardy Decl. ¶ 29; *see also id.* ¶¶ 53, 58, 60, 62.  Second, it invoked exemption 7(E) to justify its categorical withholding of the informant files for the eight informants who were publicly acknowledged during the *Rettenmaier* prosecution.  Hardy Decl. ¶¶ 113–14, 125–28.  Third, it invoked exemption 7(E) to justify redactions made to the remaining documents, which it processed and described in a *Vaughn* index.  Hardy Decl. ¶¶ 98–111; *id.* Ex. K.

EFF does not dispute that all of the records at issue here were compiled for law enforcement purposes.  *See, e.g.*, EFF's Br. at 9 n.4.  Instead, it argues that none of the FBI's withholding decisions are justifiable because it is "well[] known" that the government "develop[s] criminal cases based on material found on computers by repair technicians."  *Id.* at 26.  As a result, there can be no "concern that disclosure would create a risk of circumvention of the law."  *Id.*

The Court agrees with EFF that the FBI failed to satisfy its burden to justify the breadth of the current partial *Glomar* response—at least as applied to *all* four aspects of EFF's request.  But it concludes that the FBI did satisfy its burden to justify the redactions made to the processed documents.  As for the informant files, the Court explains in Section III.C., *infra*, that the FBI failed to satisfy its burden to justify their categorical withholding.

### 1.  *The Partial* Glomar *Response*

An agency is permitted to provide a *Glomar* response and "refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under a FOIA exception."  *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (internal quotation marks omitted).  "The *Glomar* doctrine is in large measure a judicial construct, an interpretation of

FOIA exemptions that flows from their purpose rather than their express language." *ACLU v. CIA*, 710 F.3d 422, 431 (D.C. Cir. 2013).  The D.C. Circuit has cautioned that courts should not "stretch th[e] doctrine too far" and "give their imprimatur to a fiction of deniability that no reasonable person would regard as plausible."  *Id.* at 431.

A requester may challenge a *Glomar* response either by arguing that "the agency has previously official[ly] acknowledged the fact of the existence of a requested record" or by arguing that disclosure would not cause any harm under the FOIA exemption invoked.  *James Madison Project v. DOJ*, 302 F. Supp. 3d 12, 20 (D.D.C. 2018) (internal quotation marks omitted).  EFF takes the second approach.  The Court therefore "appl[ies] the general exemption review standards established in non-*Glomar* cases."  *Wolf*, 473 F.3d at 374; *see also id.* at 375–77 (holding that a *Glomar* response was appropriate where revealing the existence of the records would disclose information protected by the relevant exemption).  Here, that means that a *Glomar* response is only appropriate if disclosing the existence of responsive records would risk the circumvention of the law under exemption 7(E).

The government argues that disclosure would risk the circumvention of the law because "disclosing whether or not there are responsive documents concerning the FBI's use, training, or recruitment of [confidential informants] at computer repair facilities, other than the Best Buy Brooks, Kentucky facility, or at the Brooks, Kentucky facility outside the 2007–2016 timeframe," Gov't's Opp'n at 3–4, Dkt. 18, would "likely reduce the effectiveness" of the technique of using computer repair technicians to identify cyber criminals, *id.* at 5.  It stresses that disclosing the existence of responsive documents would "indicate the extent of the FBI's use of this law enforcement technique."  *Id.* at 5.  Indeed, Hardy's declaration betrays a concern that disclosing the existence of responsive documents would reveal whether the FBI uses computer

technician informants at specific locations and how frequently it relies on such informants.

According to Hardy, that information will, in turn, inform criminals' judgment about whether

they should avoid certain facilities, whether they should destroy evidence because of their past

use of certain facilities, and whether they can continue to break the law without fear of

investigation because the FBI does not frequently use computer technician informants.

For example, Hardy declared that disclosure would "reveal[] the FBI has used or uses

Best Buy [confidential informants] at other Best Buy locations," which would "dissuade

criminals from seeking computer repair services from Best Buy."  Hardy Decl. ¶ 57; *see also id.*

¶ 51 ("[T]he FBI deemed revealing the existence/nonexistence of responsive records would

enable criminals to judge how they may avoid providing the FBI with critical law enforcement

data through its deployed [confidential informants.]").  Relatedly, he declared that "[c]onfirming

or denying the existence of responsive records would allow criminals to judge whether or not

they should destroy any existing evidence of their criminal activities because of previous Best

Buy interactions."  *Id.* ¶ 59.  He declared that "disclosing that the FBI has not recruited Best Buy

employees may embolden criminals who happen to be Best Buy customers to continue their

criminal activities undaunted."  *Id.* ¶ 61.  And he declared that "[r]evealing the existence of

[guidance, directives, or policy statements] would disclose whether the FBI pursued the

recruitment of computer repair employees on such a regular basis that it found the need to

establish guidance, directives, and/or policy concerning the use of [confidential informants] at

computer repair facilities."  *Id.* ¶ 63.

A *Glomar* response under exemption 7(E), however, is only appropriate where the mere

*existence* of documents would risk the circumvention of the law.  *See Vazquez*, 887 F. Supp. 2d

at 117–18; *Kalu v. IRS*, 159 F. Supp. 3d 16, 23–24 (D.D.C. 2016).  Concerns about the precise

*number* or *contents* of any responsive documents can be addressed through litigation about the

scope of any withholdings and the level of detail that must be provided to justify those

withholdings.  As the D.C. Circuit has explained, a "no number, no list" response might be

justified in "unusual circumstances" where the government believes that an exemption permits it

to withhold a "descri[ption] or even enumerat[ion] on the public record [of] the number, types,

dates, or other descriptive information about . . . responsive records." *ACLU*, 710 F.3d at 433.  A

*Glomar* response, which "requires the agency to argue . . . that the very fact of the existence or

nonexistence of responsive records is protected," is "conceptually different from conceding (or

being compelled by the court to concede) that the agency has some documents, but nonetheless

arguing that any description of those documents would effectively disclose validly exempt

information." *Id.*

  In this case, disclosing the mere existence—as opposed to the number or type—of any

documents would reveal little, if any, information about the nature or frequency of the FBI's use

of computer technician informants beyond what the FBI has already disclosed.  In the

*Rettenmaier* litigation and in this case, the FBI acknowledged and even disclosed "documents

concerning [confidential informants] utilized by the FBI between 2007 and 2016, at the Brooks,

Kentucky, Best Buy facility."  Hardy Decl. ¶ 14 (internal quotation marks omitted); *see also id.*

Ex. K; EFF's Br. at 11–12 (citing, among others, *Washington Post*, *National Public Radio*, and

*USA Today* articles that reported on the *Rettenmaier* informant disclosures).  Disclosing the

existence of at least one additional document would merely confirm that the FBI has used an

informant outside of the 2007–2016 timeframe—but possibly *only one*—at the Kentucky Best

Buy.  Such a disclosure would not reveal whether the FBI has enlisted informants from any other

Best Buy or computer repair store.  Nor would it reveal how frequently the FBI has developed

established relationships with, or obtained evidence from, computer technician informants.[3] *Cf.*

*Reporters Comm. for Freedom of Press v. FBI*, No. 17-cv-1701, 2019 WL 1003627, at *9

(D.D.C. Mar. 1, 2019) ("[A]cknowledging the existence of records, without any indication about

the number or type of records found, would not provide any information about the frequency of

the technique's use.").  For these reasons, the Court is hard pressed to conclude that disclosing

the existence of at least one additional document responsive to EFF's broad request would have

any effect on criminal behavior.

Likewise, the Court is hard pressed to conclude that disclosing the *non*-existence of any

documents responsive to EFF's request would "embolden criminals who happen to be Best Buy

[or other computer repair store] customers to continue their criminal activities undaunted,"

Hardy Decl. ¶ 61, or permit them to "judge whether or not they should destroy any existing

evidence," *id.* ¶ 59.  To conclude otherwise would presume that criminals have no reason to

believe that computer technicians ever cooperate with law enforcement agencies.  That seems

highly unlikely given that several states require computer technicians to report suspected child

pornography to law enforcement agencies.  EFF's Br. at 11 (citing N.C. Gen. Stat. § 66-67.4;

Tex. Bus. & Com. Code § 110.002; S.D. Codified Laws § 22-24A-18).[4]  Reported case decisions

---

[3] Recall that the FBI construed the term "informant" to mean "an individual with whom the FBI has an established relationship, who ha[s] a specific source identification number used to obscure [his] identi[t]y in investigatory records, and ha[s] a separate distinct file containing documentation of [his] informant history, which has restricted access within the FBI." *Id.* ¶ 3 n.1.

[4] North Carolina, for example, requires "any computer technician who, within the person's scope of employment, observes an image of a minor or a person who reasonably appears to be a minor engaging in sexual activity" to "report the name and address of the . . . owner or person in possession of the computer to the Cyber Tip Line at the National Center for Missing and Exploited Children or to the appropriate law enforcement official in the [relevant] county or municipality."  N.C. Gen. Stat. § 66-67.4(b).

also reveal that the government has built cases based on tips from computer technicians.  *See, e.g.*, *United States v. Hill*, 459 F.3d 966 (9th Cir. 2006); *United States v. Stevens*, 197 F.3d 1263 (9th Cir. 1999).  Indeed, at least in 2009 and 2014, Best Buy service orders included a disclaimer explaining that "any product containing child pornography will be turned over to the authorities." EFF's Br. Ex. 3 at 57, Dkt. 15-3; *see also* EFF's Reply Ex. 5 at 1, Dkt. 21-6.  And to the extent disclosing the non-existence of responsive documents will encourage criminals to retain evidence, the disclosure will enhance, not diminish, law enforcement efforts to identify and prosecute computer crimes.

Because the FBI has failed to establish that revealing the existence or non-existence of a single document beyond those "concerning [confidential informants] utilized by the FBI between 2007 and 2016, at the Brooks, Kentucky, Best Buy facility," Hardy Decl. ¶ 14 (internal quotation marks omitted), will "reduce or nullify" the effectiveness of this law enforcement technique, *Vazquez*, 887 F. Supp. 2d at 116 (internal quotation marks omitted), the Court will deny summary judgment as to the FBI's partial *Glomar* response.  This ruling, however, is limited. The Court expresses no view as to whether the FBI may legitimately assert a partial *Glomar* response to some aspects of EFF's request, perhaps even to entire categories of EFF's four-part request.  The Court concludes only that the current partial *Glomar* response to the *entirety* of EFF's request is unjustified.

## 2.   *The Redactions Made to the Processed Documents*

Although the FBI has not satisfied its burden to justify its partial *Glomar* response, it has satisfied its burden to justify the individual redactions it made to the processed documents described in its *Vaughn* index.  Exemption 7(E) protects the "confidential details" of even publicly known techniques, *Sussman*, 494 F.3d at 1112 (citing *Blanton*, 64 Fed. App'x at 788–

13

89), and it protects "commonly known procedures" if disclosure could "reduce or nullify their effectiveness," *Vazquez*, 887 F. Supp. 2d at 116 (internal quotation marks omitted); *see also Sack v. U.S. Dep't of Def.*, 823 F.3d 687, 694 (D.C. Cir. 2016) (permitting the government to withhold reports and other documents describing an agency's polygraph procedures and techniques); *Weisberg v. DOJ*, 745 F.2d 1476, 1492 n.27 (D.C. Cir. 1984).[5]

EFF argues that the FBI may not withhold information about "investigative techniques and procedures of its informant program along with internal search slips and related materials describing its internal review of [Best Buy] employees" because "the well-known technique of developing criminal cases based on material found on computers by repair technicians obviates any concern that disclosure would create a risk of circumvention of the law." EFF's Br. at 26. But the Hardy declaration and the FBI's *Vaughn* index make clear that the information the FBI withheld under exemption 7(E) involves "non-public investigative techniques and procedures of its informant program, and non-public specific details concerning techniques and procedures that are otherwise known to the public." Hardy Decl. ¶ 102; *see also id.* Ex. K. For example, the withheld information includes "details reflecting the FBI's standardized [confidential informant] procedures and guidelines," which "govern methods and techniques of [confidential informant] recruitment and utilization." *Id.* ¶ 102. It also includes search slips and printouts "related to

---

[5] Quoting from *Jaffe v. CIA*, 573 F. Supp. 377, 387 (D.D.C. 1983), EFF insists that the exemption "is properly asserted only where the investigative techniques and procedures at issue are 'secret,' 'obscure and not known to the public.'" EFF's Reply at 2 (alteration adopted) (quoting *Jaffe*, 573 F. Supp. at 387). But the *Jaffe* court stated only that the exemption "*extends* to information regarding obscure or secret techniques," not that it is limited to such techniques. *Jaffe*, 573 F. Supp. at 387 (emphasis added). Indeed, it recognized in the next sentence that the exemption does protect "ordinary . . . procedures" if the responsive documents "include confidential details" about those procedures. *Id.* In any event, the Court is bound by the decisions of the D.C. Circuit, which has recognized that exemption 7(E) can protect even routine and well-known techniques.

vetting potential informants" and "annual review[s] to establish a continued need of the informant[s]." *Id.* ¶ 111.  Revealing this information would reduce the effectiveness of using informants because, among other things, it "would provide key insight into the FBI's source vetting standards" and "enable those wishing to gain the FBI's confidence and pose as a potential FBI [informant] the opportunity to judge what information they should manipulate/mask to avoid discovery . . . and ensure the FBI targets them for recruitment." *Id.*  The FBI appropriately applied exemption 7(E).

As a final matter, the Court also concludes that, with respect to the processed records described in the *Vaughn* index, the FBI appropriately segregated the information protected under exemption 7(E) from non-exempt information.  When a FOIA requester "seeks a mixture of exempt and non-exempt records . . . an agency must segregate the non-exempt information from the exempt information, disclosing the former but not the latter." *Elec. Privacy Info. Ctr. v. IRS*, 910 F.3d 1232, 1237 (D.C. Cir. 2018).  If, however, an agency adequately describes its segregability analysis and justifies its withholdings, "a district court need not conduct its own in camera search for segregable non-exempt information unless the agency response is vague, its claims too sweeping, or there is a reason to suspect bad faith." *Mead Data Cent. v. U.S. Dep't of Air Force*, 566 F.2d 242, 262 (D.C. Cir. 1977).  Here, Hardy adequately explained the FBI's efforts to segregate the information, *see* Hardy Decl. ¶¶ 112, 149, and the *Vaughn* index identifies the specific documents that were redacted in full or in part, *id.* Ex. K.  The record as a whole reveals that the FBI's explanation was detailed and sufficiently tailored.  And there is no reason to suspect bad faith.  The FBI is therefore entitled to summary judgment with respect to the information withheld under exemption 7(E) in the processed documents.

### B.       Exemption 7(C)

EFF also challenges the application of exemptions 6 and 7(C) to protect the name of an individual convicted of a crime based on evidence obtained from the Kentucky Best Buy.  EFF's Reply at 16; *see also* Gov't's Opp'n at 14.  According to the government, the eight relevant pages "discuss the pre-arrest investigative efforts of the FBI, concerning how a specific case was handled prior to any public arrest and indictment."  Gov't's Opp'n at 15; *see also* Suppl. Hardy Decl. ¶ 11; Hardy Decl. Ex. K (Bates-numbered pages 13, 16, 17, 19, 20, 71, 72, and 118).  The Court concludes that the FBI must provide additional documentation to enable the Court to balance the individual's privacy interest against the public's interest in disclosure.

"FOIA Exemptions 6 and 7(C) seek to protect the privacy of individuals identified in certain agency records."  *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011).  Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), and exemption 7(C) protects information compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy," *id.* § 552(b)(7)(C).  Both exemptions are "implicated anytime revelation of the contents of information would subject the person to whom they pertain to embarrassment, harassment, disgrace, loss of employment or friends." *Holy Spirit Ass'n for Unification of World Christianity v. FBI*, 683 F.2d 562, 564 (D.C. Cir. 1982) (internal quotation marks omitted).  When an agency invokes both exemptions, courts "focus" on exemption 7(C) because it "establishes a lower bar for withholding material." *Citizens for Responsibility & Ethics in Washington v. DOJ* (*CREW I*), 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014) (internal quotation marks omitted).

Under exemption 7(C), courts balance the privacy interest at stake against the public interest in disclosure. *Citizens for Responsibility & Ethics in Washington v. DOJ* (*CREW II*), 854 F.3d 675, 681 (D.C. Cir. 2017). The government "must account for the privacy interests at stake, recognizing that previous disclosures or admissions may have diminished those interests." *Id.* at 683. But if the withheld information implicates a privacy interest, the FOIA requester "bears the burden of showing (1) that 'the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) that the information [it] seeks 'is likely to advance that interest.'" *Roth v. DOJ*, 642 F.3d 1161, 1175 (D.C. Cir. 2011) (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)). It is well established that "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." *Sussman*, 494 F.3d at 1115 (internal quotation marks omitted).

Although the names of private individuals in law enforcement files are ordinarily exempt from disclosure absent "compelling evidence that the agency is engaged in illegal activity," *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991), the D.C. Circuit has held that the names of individuals who have already been "charged, convicted or otherwise implicated in connection with [an] investigation" must be considered on a case-by-case basis because "these individuals have a diminished privacy interest" in the information contained in investigative documents. *CREW II*, 854 F.3d at 682; *see also id.* at 683 ("With respect to those individuals with diminished privacy interests, the withholding of information pursuant to Exemptions 6 and 7(C) must be subjected to a particularized weighing of the public and privacy interests that would be implicated by the disclosure sought . . . ."). Courts must consider whether, for example, "a responsive document could reveal new information about a person's conduct, going

17

beyond the facts in the public record related to that person's conviction and sentencing." *Id.* at 682.  If so, the privacy interest at stake is more likely to outweigh the public interest.  *Id.*

Here, EFF has identified a public interest with several similarities to the "significant public interest in disclosure" recognized by the D.C. Circuit in *ACLU*, 655 F.3d at 12.  There, the D.C. Circuit held that exemption 7(C) did not protect the case name, docket number, and court for "criminal cases in which the government prosecuted individuals after judges granted applications for cell phone location data without a determination of probable cause, and in which those individuals were subsequently convicted or entered public guilty pleas."  *Id.* at 6; *see also id.* at 19–20.  The *ACLU* Court noted that press reports suggested a significant public interest in learning about the use of cell phone location data.  *Id.* at 12–13.  Similarly, EFF cites press reports that suggest at least some degree of public interest in learning about the FBI's use of computer technician informants.  EFF's Reply at 17.  Also, like the plaintiff in *ACLU*, EFF could use the disclosed name to review filings and transcripts from the criminal case, which "could provide further insight regarding the efficacy of the [law enforcement] technique by revealing whether courts suppress its fruits, and [c]ould disclose the standard or standards the government uses to justify [the technique.]"  655 F.3d at 14.  Finally, the information could "provide facts . . . that would inform the public discussion concerning the intrusiveness of th[e] [technique]."  *Id.*

The current record does not permit the Court to determine whether this public interest is sufficiently weighty to overcome the relevant privacy interest.  The FBI must therefore supplement the record with additional documentation about the contents of the redacted documents to allow the Court to determine the extent of the relevant individual's privacy interest.

### C.    The Informant Files

The FBI invoked exemptions 6, 7(C), 7(D), and 7(E) to "categorically den[y] release of the informant files" for the eight confidential informants acknowledged in *Rettenmaier*.  Hardy Decl. ¶ 113.  EFF challenges the FBI's decision only with respect to the four publicly named informants, largely on the ground that the exemptions were waived due to public disclosures made in *Rettenmaier* and during this litigation.  EFF's Reply at 5–6.  It argues both that the FBI did not satisfy its burden to justify the categorical withholding of the files and that the FBI waived any argument that these and other exemptions apply to portions of the informant files. *Id.* at 5–16.  The Court agrees that the FBI did not satisfy its burden with respect to the categorical withholdings, but it disagrees that the FBI waived the application of various exemptions to portions of the informant files.

It is well established that "[t]he agency bears the burden of establishing that a claimed exemption applies."  *CREW I*, 746 F.3d at 1088.  An agency may "carry that burden by submitting affidavits that describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Id.* (internal quotation marks omitted).  The D.C. Circuit has permitted agencies to apply a "categorical approach" to justify withholding decisions when "the FOIA litigation process threatens to reveal the very information [an] agency hopes to protect."  *Prison Legal News v. Samuels*, 787 F.3d 1142, 1149 (D.C. Cir. 2015) (internal quotation marks omitted).  Under that approach, "[t]he government may justify its withholdings and redactions category-of-document by category-of-document, so long as its definitions of relevant categories are sufficiently distinct to allow a court to determine whether specific claimed exemptions are properly applied."  *Id.* at

1149–50 (internal quotation marks omitted).  That approach, however, is only appropriate when "[t]he range of circumstances included in [each] category . . . characteristically support an inference that the statutory requirements for exemption are satisfied."  *Id.* at 1150 (alteration adopted and internal quotation marks omitted).

In his declaration, Hardy explained that the files "could include" ten categories of documents, and he provided a "general description" of the documents in each category.  Hardy Decl. ¶ 114.  He then proceeded to broadly assert exemptions 6, 7(C), 7(D), and 7(E) without tying them to any of the defined categories.  *Id.* ¶ 115–28.

Hardy's explanation is insufficient to justify the withholding of the four informant files in their entirety.  As a threshold matter, it is not clear whether all of the withheld documents fall within the identified categories or whether the FBI is seeking to withhold some documents without any justification at all.  Even assuming the former, the Court is unpersuaded.  Hardy stated, for example, that exemptions 6 and 7(C) apply because the informants "maintain substantial privacy interests in not being publicly identified as FBI informants" and in keeping confidential "[t]he breadth, depth, and nature of the[ir] cooperation."  *Id.* ¶ 123.  But one category of documents in the informant files is titled "documents implementing sensitive investigative techniques" and includes "documents . . . utilized to implement specific, sensitive, investigative techniques."  *Id.* ¶ 114 (capitalization omitted).  It is unclear, on this record, how these documents will reveal personal information about any of the informants, or why redactions of any personal identifying information will not protect any privacy interests to the extent they exist.  *See Mays v. DEA*, 234 F.3d 1324, 1327 (D.C. Cir. 2000) ("Exemption 7(C) ordinarily permits the Government to withhold only the specific information to which it applies, not the entire page or document in which the information appears; any non-exempt information must be

segregated and released . . . .").  In other words, the "range of circumstances included in [each]

category" does not characteristically support an inference that the statutory requirements for

exemption are satisfied."  *Prison Legal News*, 787 F.3d at 1150 (alteration adopted and internal

quotation marks omitted).[6]

Without this categorical argument, the government must rely on Hardy's alternative

invocation of exemptions 3, 6, 7(A), 7(C), 7(D), and 7(E) to protect "portions" of the informant

files, Hardy Decl. ¶ 130, whether those portions are grouped into "functional categories," *id.*

¶ 132, or considered more particularly, *id.* ¶ 140.  EFF argues that the FBI may not now invoke

these exemptions because it failed to "adequately substantiate" their application.  EFF's Br. at

27.  It relies, in particular, on *Maydak v. DOJ*, 218 F.3d 760 (D.C. Cir. 2000), in which the D.C.

Circuit held that, "as a general rule, [the government] must assert all exemptions at the same

time, in the original district court proceedings," *id.* at 764.  According to EFF, the FBI failed to

adequately assert the exemptions because Hardy used hypothetical language to describe what is

usually contained in an informant file.  EFF's Br. at 27–28.  For example, Hardy declared that

"[i]nformant files often contain information concerning physical or documentary evidence

---

[6] The government argues that it is entitled to summary judgment with respect to the informant files because EFF waived any argument about the application of exemptions 6 and 7(C).  Gov't's Opp'n at 2–3, 18.  EFF's briefing could have been clearer on this point, but EFF did challenge the application of the exemptions to "materials involving" the four publicly identified informants, "including . . . the informant files [the FBI] has withheld in full."  EFF's Br. at 18.  EFF also challenged the FBI's "argument that portions of [the] informant files can be withheld under additional FOIA exemptions."  *Id.* at 27 (capitalization omitted).  That challenge would only matter if the Court rejected the FBI's bases for withholding the informant files in full—and two of those bases were exemptions 6 and 7(C).  In these circumstances, it would be inappropriate to hold that EFF waived the argument.  *Cf. Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1117 (D.C. Cir. 2010).

gathered during FBI investigations," and "[r]evealing this information could possibly reveal source identities," among other things.  Hardy Decl. ¶ 135.

EFF confuses a failure to invoke an exemption at all with a failure to satisfy the FBI's burden to justify the application of an exemption.  In *Maydak*, the D.C. Circuit ruled that the government failed to preserve arguments about certain exemptions, in part because the government conceded that "it did not 'formally' invoke other FOIA exemptions in the original district court proceedings."  218 F.3d at 765.  Instead, it only "reference[d]" the possibility that other exemptions might apply.  *Id.*  The D.C. Circuit held that such references were insufficient because the government did not assert the exemptions "in such a manner that the district court c[ould] rule on the issue."  *Id.*  It then expressly distinguished cases in which the D.C. Circuit permitted the government to provide additional information to the district court to justify various exemptions.  In those cases, the government invoked other exemptions but "fell short in its good faith attempts to carry its burden of proof with respect to [those] exemptions."  *Id.*

Hardy clearly invoked exemptions 3, 6, 7(A), 7(C), 7(D), and 7(E).  He stated that "the FBI is also asserting" the other exemptions, Hardy Decl. ¶ 130; *see also id.* ¶ 140, and he proceeded to explain over the course of several paragraphs how they apply to the informant files, *id.* ¶ 131–46.  Although he frequently discussed the relevant issues hypothetically, that is only because he maintained that a more detailed description of "the precise contents of a[] [confidential] informant file" would "risk[] the harms protected by the exemptions."  *Id.* ¶ 131. The persuasiveness of that argument is relevant to the question whether the FBI satisfied its burden, not whether it invoked the exemptions at all.

However, even though the government has not waived these arguments, the briefing on the application of exemptions 3, 6, 7(A), 7(C), 7(D), and 7(E) to the informant files is

inadequate.  In the government's motion for summary judgment, it devotes a mere four sentences to justifying the application of all six exemptions.  Gov't Br. at 22–23.  And it barely expands that analysis in its reply.  Gov't Reply at 19–20.  For EFF's part, it devotes almost its entire argument to the preservation question rather than the question whether the FBI satisfied its burden.  *See* EFF's Br. at 27–28; EFF's Reply at 14–16.  The Court therefore directs the parties to file supplemental briefing on the question whether the FBI appropriately withheld the relevant informant files based on the government's alternative arguments.  *See Elec. Privacy Info. Ctr. v. DOJ*, 296 F. Supp. 3d 109, 122 (D.D.C. 2017) ("[T]he document-production process is a fluid one at the district-court level, and it often includes contemporaneous review and continuous production determinations by agency-defendants.").

## CONCLUSION

For all these reasons, it is

**ORDERED** that the government's Motion for Summary Judgment, Dkt. 13, is **GRANTED IN PART** and **DENIED IN PART**.  It is further

**ORDERED** that EFF's Cross-Motion for Summary Judgment, Dkt. 15, is **DENIED**. And it is

**ORDERED** that the parties shall file a joint status report on or before May 3, 2019 that proposes a schedule for further proceedings.  The Court will address all remaining issues after the parties file the additional briefing and documentation required by this Opinion.

*Dabney L. Friedrich*

**DABNEY L. FRIEDRICH**
United States District Judge

April 17, 2019